UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORIS LEVITT,<br><br>        Plaintiff,<br><br>   v.<br><br>YELP! INC,<br><br>        Defendant.<br>_____ / <br>CATS AND DOGS ANIMAL HOSPITAL, INC., et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>YELP! INC,<br><br>        Defendant.<br>_____ / | No. C 10-1321 MHP<br>No. C 10-2351 MHP<br><br>**ORDER**<br><br>**Re:  Appointment of Lead Counsel** |

   The above-captioned actions, both purported class actions against the same defendant, have been consolidated. Fed. R. Civ. P. 42(a). On July 26, 2010, attorneys vying for lead counsel submitted information ordered by the court. Fed. R. Civ. P. 42(a)(1)(3) (allowing court to issue any other orders to avoid unnecessary cost or delay, including appointment of lead counsel). Two sets of attorneys originally sought appointment as lead counsel: 1) the law firm of Beck & Lee, in conjunction with the Weston firm; and 2) Ongaro Burtt LLP, in conjunction with Murray & Associates. Due to a recent dispute between the Beck & Lee firm and the Weston firm, neither firm desires to continue working with the other, but each firm nonetheless seeks to be lead counsel.

The Beck & Lee firm and the Weston firm claim to have seventeen pending federal actions, fourteen of which are pending in California. A review of these actions demonstrates that the vast majority of them settled prior to much litigation. Class certification was also denied in numerous actions. Some actions were dismissed after hearing on a motion to dismiss. Thus, it appears that the firms do not have significant experience actually obtaining class certification, or with litigation subsequent to class certification. The firms do, however, intend to avoid cost and delay through the following measures: using technology; minimizing travel and foregoing reimbursement for certain travel costs; and not billing for research, photocopying and phone calls. They have also implemented a website to disseminate information to the public about this action. Moreover, they filed the first of the three separate purported class actions against defendant, and have agreed to limit their fees.

Although both firms have worked on this action extensively, the court is concerned about their relative lack of experience with class certification motions and subsequent litigation. The first-named plaintiff, Cats & Dogs Animal Hospital, Inc., is no longer represented by Beck & Lee, and appears to have retained the Weston firm. The relations between the firms appear to have broken down irretrievably, since one has filed a lawsuit against the other. The court, therefore, is concerned that the dispute between the firms will preclude both firms from adequately representing the interests of plaintiffs only represented by the other firm.

Ongaro Burtt LLP, on the other hand, intends to create efficiencies by stipulating to a protective order and meeting in person with respect to discovery disputes. In their papers, they also provide time-estimates regarding various aspects this action, up to and including class certification briefing. Although Murray & Associates is listed on the moving papers, during oral argument, David Ongaro of Ongaro Burtt LLP represented that he would be "carrying the laboring oar" in this action, including trial if necessary. Docket No. 32 (Transcript) at 12:8-11. The Ongaro firm appears to litigate frequently in the Northern District of California, representing both plaintiffs and defendants, although the firm does not appear to have any significant class action experience. Nonetheless, given the circumstances described above and the observation of the court as to the

2

demeanor of the attorneys and their ability and willingness to work cooperatively with other counsel in this action, the court appoints David Ongaro and the Ongaro firm as lead counsel.

The court is mindful that the Beck & Lee firm and the Weston firm represent approximately 70 separate plaintiffs in this action, and this order does not substitute the Ongaro firm as counsel for all the party-plaintiffs. The function of lead counsel is to act for all plaintiffs, and to the extent that parties not represented by lead counsel are uniquely affected by lead counsel's decisions, approval from counsel for those parties must be sought. *Cf. MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958) (discussing role of general counsel). For example, lead counsel should work with the respective attorneys regarding decisions affecting claims brought only by clients of the Beck & Lee firm or the Weston firm. Similarly, decisions by lead counsel regarding the "Sponsor Class" subclass, asserted only by clients of the Beck & Lee firm and the Weston firm, should be discussed with the Beck & Lee firm and the Weston firm. Lead counsel must also keep the other attorneys advised of the progress of the litigation. Lead counsel must use their judgment about limits on this communication; too much communication may defeat the objectives of efficiency and economy, while too little may prejudice the interests of the parties.

All counsel shall work cooperatively with each other, and shoulder responsibilities as necessary, especially with respect to issues particular to their own clients. The court expects both civility and cooperation amongst plaintiffs' counsel, and will be mindful of these efforts if and when attorneys' fees are awarded. The court may be willing to revisit the issue of lead counsel if the attorneys are able to demonstrate a working relationship amongst themselves that will foster efficiency.

It is early in this litigation and a good time to point out the responsibilities that all counsel have in this or any other litigation. The American College of Trial Lawyers has adopted Codes of Conduct for pretrial and trial. In the preamble to each they advise that a trial lawyer owes opposing counsel and the court "duties of courtesy, candor, and cooperation" at all stages of the proceedings. American College of Trial Lawyers, *Codes of Trial and Pretrial Conduct*, approved Oct. 2002, at 1. What have been referred to as "rambo" or "guerilla warfare" techniques should not be confused with

3

zealous advocacy. The court notes that all of the attorneys in this litigation, regardless of where their offices are located, state that they are members of the California Bar. In 2007, the Board of Governors of the State Bar adopted "*California Attorney Guidelines of Civility and Professionalism*", adopted July 20, 2007, *available at* http://calbar.ca.gov/calbar/pdfs/reports/Atty-Civility-Guide.pdf. The Guidelines commence by declaring that attorneys have "an obligation to be professional with clients, other parties and counsel, the courts and the public. This obligation includes civility, professional integrity, personal dignity, candor, diligence, respect, courtesy, and cooperation, all of which are essential to the fair administration of justice and conflict resolution." *Id.* App. B at 3. The attorneys in this action shall comply with the California Bar Guidelines and to that end they shall: 1) read them in their entirety; 2) sign the Pledge that follows the Guidelines; and 3) file the Pledge with the court within thirty (30) days of the date of this order. This court will take seriously the obligations of counsel and expects all counsel to do so as well.

Also within thirty (30) days of this order, the Ongaro firm shall file a consolidated amended complaint. Within thirty (30) of the filing of the consolidated amended complaint, defendant shall file a responsive pleading. Class-related discovery may commence subsequent to the court's order adjudicating the motion to dismiss if one is filed, or subsequent to the filing of an answer.

IT IS SO ORDERED.

Dated: August 24, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

4