LAWRENCE D. MURRAY, State Bar No. 77536
NOAH W. KANTER, State Bar No. 224580
MURRAY & ASSOCIATES
1781 Union Street
San Francisco, CA 94123
Telephone: (415) 673-0555
Facsimile: (415) 928-4084

DAVID R. ONGARO, State Bar No. 154698
AMELIA D. WINCHESTER, State Bar No. 257928
ONGARO BURTT & LOUDERBACK LLP
595 Market St., Suite 610
San Francisco, CA 94105
Telephone: (415) 433-3900
Facsimile: (415) 433-3950

Attorneys for Plaintiffs
BORIS Y. LEVITT *et al*.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORIS Y. LEVITT, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YELP! INC.; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. CV 10-01321 MHP<br><br>**PLAINTIFF LEVITT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT AND TO DISMISS OR STRIKE CLASS ACTION ALLEGATIONS**<br><br>Date: February 7, 2011<br>Time: 2:00 p.m.<br>Place: Courtroom 15<br>Judge: Hon. Marilyn Hall Patel |

**TABLE OF CONTENTS**

TABLE OF CASES AND AUTHORITIES .......... i-iv

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 1

A. Yelp Background .......... 1

B. Class Allegations .......... 2

C. Plaintiffs' Experiences with Yelp .......... 3

III. ARGUMENT .......... 5

A. Legal Standards .......... 5

B. Plaintiffs Have Standing Under Article III and the UCL .......... 6

1. Plaintiffs Have Alleged Facts Sufficient to Confer Standing Under Article III .......... 6

a. All Plaintiffs' Reputations were Harmed, They Lost Customers and Business and Sponsor Plaintiffs Lost Money Paid for Yelp Advertising .......... 6

b. Yelp's Conduct Is Directly Linked to Plaintiffs' Injuries .......... 8

c. Injunctive and Restitutionary Relief Will Remedy Plaintiffs' Injuries .......... 13

2. Plaintiffs Have Alleged Facts Sufficient to Confer Standing Under the UCL .......... 13

3. Plaintiffs Have Properly Stated a Claim for Unfair Competition .......... 16

a. Unlawful Conduct .......... 16

i. Yelp Threatened Unlawful Injury to Plaintiffs' Property .......... 17

ii. Non Sponsor Plaintiffs' Attempted Extortion Claim Does Not Require that Plaintiffs Provided Property to Yelp .......... 19

iii. Sponsor Plaintiffs Purchased Advertising because of Reasonable Fear .......... 19

b. Unfair Conduct .......... 21

**TABLE OF CONTENTS (cont.)**

C. Plaintiffs' Claims Should Not be Dismissed or Stricken .................................................. 22

1. It is Improper to Dismiss Plaintiffs' Claims........................................................ 22

2. Plaintiffs Have Alleged Sufficient Subclasses ...................................................... 23

IV. CONCLUSION ...................................................................................................... 25

# TABLE OF CASES AND AUTHORITIES

**Cases**

*Actimmune Mktg. Litigation*, No. C 08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ....................................... 17

*Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136 (2008) ....................................... 13

*Barquis v. Merchants Collection Ass'n.* 7 Cal. 3d 94 (1972)........................................................ 21

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009)................................................................. 14

*Brazil v. Dell Inc.*, 585 F.Supp.2d 1158 (N.D. Cal. 2008)........................................................... 24

*Buckland v. Threshold Enters.*, 155 Cal.App.4th 798 (2007) ...................................................... 13

*Carafano v. Metrosplash*, 339 F.3d 1119 (9th Cir. 2003)............................................................. 10

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ............ 21

*Chan v. Lund*, 188 Cal.App.4th 1159 (2010)................................................................................ 19

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir.2010) .................................. 5

*City and County of San Francisco v. Tutor Saliba Corp.*, No. C 02-5286 CW, 2005 WL 645389 (N.D. Cal. March 17, 2005) ........................................................................ 20

*Clayworth v. Pfizer*, 49 Cal.4th 758 (2010) .................................................................................. 15

*Coal. for a Sustainable Delta v. FEMA*, 711 F. Supp. 2d 1152 (2010) ......................................... 12

*Dodd-Owens v. Kyphon, Inc.*, No. C06-3988, 2008 WL 410241 (N.D. Cal. Feb. 12, 2008) ......... 25

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010)........................................................ 16

*Ewert v. eBay, Inc.*, Nos. C-07-0219 RMW, C-07-04487 RMW, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010)............................................................................ 24

*F.T.C. v. Accusearch Inc.*, 570 F.3d 1187 (2009) ................................................................. 10, 11

*Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) .............................. 11

*Finelite, Inc., v. Ledalite Architectural Prods.*, No. C-10-1276 MMC, 2010 WL 3385027 (N.D. Cal. Aug. 26, 2010)........................................................................................ 14

*Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263 (11th Cir. 2003) .... 8, 9, 12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.*, 528 U.S. 167 (2000) ......................................... 6

*G&C Auto Body, Inc. v. GEICO Gen. Ins. Co.*, 2007 WL 4350907 (N.D. Cal. 2007)................... 15

*George Lussier Enters., Inc. v. Subaru of New England, Inc.*, 2001 WL 920060 (D.N.H. Aug. 3, 2001)................................................................................................ 25

*Hall v. Time, Inc*., 158 Cal. App. 4th 847 (2008) ........ 14

*Hovesepian v. Apple*, Inc., No. 08-5788, 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ........ 24

*Humphries v. Los Angeles County*, No. SACV 03-697 JVS, 2005 WL 6431760, *rev'd on other grounds* in *Los Angeles County v. Humphries*, __U.S.__ (2010), 131 S. Ct. 447 (2010) ........ 6

*Hy Cite Corp. v. Badbusinessbureau.com*, LLC, 418 F.Supp.2d 1142 (2005) ........ 10, 11

*In Re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ........ 6

*In re Wright*, 65 Cal.2d 650 (1967) ........ 19

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) ........ 5

*Lee v. Capital One Bank*, No. C 07-4599, 2008 WL 648177 (N.D. Cal. Mar. 5, 2008) ........ 8

*Leong v. Square Enix of Am. Holdings, Inc*., 2010 WL 1641364 (C.D. Cal. April 20, 2010) ........ 22

*Lowden v. T-Mobile USA, Inc*., 512 F.3d 1213 (9th Cir. 2008) ........ 6

*McKell v. Washington Mutual, Inc*., 142 Cal. App. 4th 1457 (2006) ........ 16

*Meese v. Keene*, 481 U.S. 465 (1987) ........ 6

*Myers v. Medquist, Inc*., No. 05-4608, 2006 WL 3751210 (D.N.J. Dec. 20, 2006) ........ 25

*Neitzke v. Williams*, 490 U.S. 319 (1989) ........ 5

*Overstock.Com, Inc., v. Gradient Analytics, Inc. et a*l., 151 Cal. App. 4th 688 (2007) ...... 13, 10, 15

*Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir. 1998) ........ 5

*People v. Anderson*, 75 Cal.App. 365 (1925) ........ 19

*People v. Casa Blanca Convalescent Homes, Inc*., 159 Cal. App. 3d 509 (1984) ........ 21

*People v. Oppenheimer*, 209 Cal.App.2d 413 (1963) ........ 18

*People v. Sales*, 116 Cal. App. 4th 741 (2004) ........ 19

*Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583 (2008) ........ 13

*Presbyterian Church v. United States*, 870 F.2d 518 (1989) ........ 6, 7

*Rothman v. Vedder Park Management*, 912 F.2d 315 (9th Cir. 1990) ........ 18

*Rubin v. Green*, 4 Cal.4th 1187 (1993) ........ 21

*Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir. 2010) ........ 7

*Sanders v. Apple, Inc*., 672 F.Supp.2d 978 (2009) ........ 8

*Schlagal v. Learning Tree, Int'l*, No. 98-6384, 1999 WL 672306 (C.D. Cal. Feb. 23, 1999) ........ 24

*Sigmond v. Brown*, 645 F.Supp. 243 (C.D. Cal. 1986) ........ 18

*Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351 (9th Cir. 1996) ........ 23

*Smith v. State Farm Mutual Auto. Ins*. Co, 93 Cal. App. 4th 700 (2001) ........ 21

*Sosa v. DIRECTTV, Inc*., 437 F.3d 923 (9th Cir. 2006) ........ 18

*Stearns v. Select Comfort Retail Corp*., No. 08-cv-02746, 2009 WL 4723366 (N.D. Cal. Dec. 4, 2009) ........ 24

*Swift v. Zynga Game Network*, No. C 09-05443 SBA, 2010 WL 4569889 (N.D. Cal. Nov. 3, 2010) ........ 5, 11

*Troyk v. Farmers Group, Inc*., 171 Cal. App. 4th 1305 (2009) ........ 16

*Two Jinn, Inc. v. Gov't Payment Serv., Inc*., 2010 WL 1329077 (S.D. Cal. April 1, 2010) ........ 7

*United States v. Granados*, 142 F.3d 1016 (1998) ........ 20

*United States v. Lisinski*, 728 F.2d 887 (1984) ........ 17

*United States v. Marsh*, 26 F.3d 1496 (9th Cir. 1994) ........ 20

*United States v. Rivera Rangel*, 396 F.3d 476 (1st Cir. 2005) ........ 17

*United States v. Sequel Contractors, Inc*., 402 F. Supp. 2d 1142 (C.D. Cal. 2005) ........ 15

*Universal Commc'n Sys. Inc. v. Lycos, Inc*., 478 F.3d 413 (1st Cir. 2007) ........ 10

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987) ........ 5

*Westways World Travel, Inc. v. AMR Corp*., No. EDCV 99-386, 2005 WL 6523266 (C.D. Cal. Feb. 24, 2005) ........ 25

*White v. Trans Union, LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006) ........ 15

*Wolk v. Green*, 516 F.Supp.2d 1121 (N.D. Cal. 2007) ........ 19

**Statutes**

18 U.S.C. § 1951(b)(2) ........ 16

47 U.S.C. § 230(c)(1) ........ 10

Cal. Bus & Prof. Code §§ 17204 ........ 13

Cal. Bus. & Prof. Code § 17200 ........ 15, 16

Case3:10-cv-01321-MHP Document62 Filed01/07/11 Page7 of 32

**Statutes (Cont.)**

Cal. Penal Code § 519 .......... 16, 19

Cal. Penal Code § 523 .......... 17

Cal. Penal Code § 524 .......... 16

**Rules**

Fed. R. Civ. P. 12(f) .......... 5

iv

PLAINTIFFS' OPP'N TO MOTION TO DISMISS AND TO DISMISS OR STRIKE CLASS ALLEGATIONS
Case No. CV 10-01321 MHP

## I. INTRODUCTION

Plaintiffs Boris Y. Levitt, d/b/a Renaissance Restoration, a/k/a Renaissance Furniture Restoration ("Levitt"), Cats and Dogs Animal Hospital, Inc. ("Cats and Dogs"), Tracy Chan, d/b/a Marina Dental Care, a/k/a Marina Dental Care ("Chan") and Professional Construction Group, Inc. d/b/a Paver Pro ("Paver Pro") on behalf of themselves and all others similarly situated, filed a class action Second Amended and Consolidated Complaint ("SAC") against Defendant Yelp! Inc. ("Yelp" or "Defendant") for a violation of Business and Professions Code section 17200. Defendant now moves to dismiss this case and to strike or dismiss the class allegations.

Plaintiffs have adequately alleged that they suffered concrete injuries caused by Yelp's unlawful business practices (which include extortion and attempted extortion) and its unfair business practices (which include deceptive, retaliatory, and other harmful practices) and for which this Court can provide redress. Plaintiffs indisputably have stated a claim under California's Unfair Competition Law ("UCL"). Plaintiffs bring their claims on behalf of an ascertainable class and satisfy the typicality requirement of Rule 23, and certifying the class will not require individualized inquiries. Accordingly, Defendant's motion should be denied entirely.

## II. STATEMENT OF FACTS

### A. Yelp Background

Yelp is a review website, which allows users to post reviews and rate businesses. SAC ¶2. Users post reviews and assign a star rating with one star being the lowest and five stars being the highest rating. *Id.* Yelp then assigns the business an overall star rating based on *some* of the user reviews. *Id.* Yelp draws over 25 million people each month, who can search the public ratings of businesses and/or post their own reviews. *Id.* Yelp claims that its website is "Real People. Real Reviews" and that Yelp will only remove user reviews under certain circumstances, including 1) when Yelp's automated filter suppresses the review; 2) when the review violates the Yelp Terms of Service or Content Guidelines; or 3) when the user removes the review ("Review Terms"). SAC ¶¶3, 6.

Despite these representations, Yelp does not comply with its own Review Terms. SAC ¶7.

Instead, Yelp actively manipulates the reviews of users to coerce businesses to purchase advertising. *Id.* Yelp uses several approaches to effectuate its extortionist conduct and obtain its desired advertising revenues. Each approach is firmly rooted in Yelp's understanding that a business's reputation and revenues are often tied to rating-based websites like Yelp. SAC ¶¶8, 24.

To instill fear in a business and coerce it to pay for advertising, Yelp controls a business's overall star rating primarily by manipulating the reviews contrary to Yelp's own policies and representations. SAC ¶¶34-35, 37, 38, 40. This can occur several ways. Yelp may manipulate which user reviews are filtered (essentially suppressed from general public view and not considered as part of the star rating), which affects and controls the business's overall star rating. *Id.* Yelp may refuse to remove reviews that violate its own Review Terms, which affects and controls the business's overall star rating. *Id.* Yelp may generate and post false negative reviews for the business which directly affects and controls the business's overall star rating. *Id.* And Yelp may represent to a business that it has the ability to remove reviews, which would affect and control the business's overall star rating.

Each of Yelp's approaches revolve around unfair rating changes, which businesses fear because of the corresponding loss of customers and revenue. SAC ¶¶8, 10. Yelp capitalizes on this fear by both implicit and explicit threats that if the business does not pay for advertising, its overall star rating and reviews will decline. *Id.*

**B. Class Allegations**

Plaintiffs seek to represent the following subclasses of Non Sponsors (those whose reviews Yelp manipulated, but who did not purchase advertising) and Sponsors (those whose reviews Yelp manipulated and who thereafter purchased advertising). *See* SAC ¶ 108(a)-(b).

Non Sponsors are defined as:

> [a]ll similarly situated businesses and persons nationwide who were in contact with Yelp regarding the option to advertise on Yelp, declined to purchase advertising, and as a result of not purchasing advertising, were subject to the manipulation of the reviews of their businesses by Yelp – in a manner that did not comply with Yelp's representations regarding its

> Review Terms[1] – during the four years prior to the commencement of this lawsuit, through the final resolution of this lawsuit.

*Id.*

Sponsors are defined as:

> All similarly situated businesses and persons nationwide who were in contact with Yelp regarding the option to advertise on Yelp, whose reviews were manipulated by Yelp in a manner that did not comply with Yelp's representations regarding its Review Terms and who thereafter purchased advertising during the four years prior to the commencement of this lawsuit, through the final resolution of this lawsuit.

*Id.*

**C. Plaintiffs' Experiences with Yelp**

Non Sponsor Plaintiff Levitt[2] was contacted by a Yelp sales representative in July 2009 asking Levitt to purchase advertising. SAC ¶¶45-46. Subsequently, Levitt declined the offer. SAC ¶46. *Just two days* after Levitt declined Yelp's advertising solicitation, all but one of his top-rated 5 star reviews was removed from his public Yelp review page. SAC ¶48. Yelp's action caused Levitt's overall star rating to plummet to 3.5 stars. SAC ¶¶ 47-49. Yelp's manipulation caused Levitt to have significantly reduced customer interest in his business (his Yelp page was reviewed only 158 times as opposed to 261 times the previous month). SAC ¶ 48. And Levitt's monthly business income declined accordingly. SAC ¶48. Yelp continued its unfair conduct by restricting Levitt's searchable business category designations from multiple categories to just one category. SAC ¶52.

---

[1]/ For purposes of both subclass definitions, Review Terms means, as set forth in the complaint, Yelp's public representation that reviews may only be removed from Yelp if: 1) A user removes the review; 2) Yelp removes the review for violating the Terms of Service or Content Guidelines; or 3) "The review may have been suppressed by Yelp's automated software system. This system decides how established a particular reviewer is and whether a review will be shown based on the reviewer's involvement on Yelp. While this may seem unfair to you, this system is designed to protect both consumers and businesses alike from fake reviews (i.e., a malicious review from a competitor or a planted review from an employee). The process is entirely automated to avoid human bias, and it affects both positive and negative reviews. It's important to note that these reviews are not deleted (they are always shown on the reviewer's public profile) and may reappear on your business page in the future." *See id*.

[2]/ For purposes of this motion only, Plaintiffs' experiences with Yelp are only addressed summarily, due to page constraints.

In September 2009, a Yelp sales representative began calling Non Sponsor Plaintiff Cats and Dogs and promised to manipulate its reviews if Cats and Dogs purchased advertising. SAC ¶¶ 59-62. *Not even one week* after Cats and Dogs declined to purchase advertising, Yelp posted multiple negative reviews. SAC ¶¶65-67. One of these negative reviews had been removed before because it violated Yelp's Review Terms. SAC ¶60. Plaintiff alleges that the other new negative reviews were manufactured by Yelp or its agents. SAC ¶¶40, 65-67. Yelp's conduct caused Cats and Dogs reputational harm, a loss in customers, page views, sales, business revenues and assets. SAC ¶73.

In May or June of 2008, Sponsor Plaintiff Chan was contacted by a Yelp sales representative and offered the opportunity to advertise. SAC ¶77. Yelp told Chan that Yelp employees had the ability to remove reviews from a business's review page. SAC ¶81-82, 89. In August 2008, Chan declined to purchase advertising from the sales representative. SAC ¶79-80. *Within just two to three days* after Chan declined to purchase advertising, Yelp removed nine top-rating 5 star reviews from Chan's Yelp review page. SAC ¶80. Yelp caused Chan's overall star rating to plunge from the highest 5 star rating to 3 stars. *Id*. Because Chan feared that Yelp would continue to manipulate her public reviews (which Yelp admitted they could and would do), she felt compelled to purchase advertising. SAC ¶¶82-83. Just days after Chan purchased advertising, the 5 star reviews Yelp had removed were suddenly reinstated and Chan's overall star rating rose again. SAC ¶83. In October 2008, Yelp asked Chan to increase her advertising payments to $500.00 per month. SAC ¶84. Instead, Chan cancelled her advertising contract, and Yelp then removed positive reviews from her review page and replaced them with negative reviews. SAC ¶85. Yelp's conduct caused her overall star rating to decline, the number of Chan's new patients, her revenues and business assets declined, and her reputation was harmed. SAC ¶¶91-92.

During the beginning of September 2009, Yelp suddenly removed a series of positive reviews from Sponsor Plaintiff Paver Pro's review page. SAC ¶¶95-98. Yelp also retained a negative review even though it violated Yelp's own Review Terms. *Id.* Because of Yelp's conduct, Paver Pro purchased advertising from Yelp. SAC ¶¶95-98. Once Paver Pro purchased

advertising, many of its positive reviews were reinstated. SAC ¶100. During March 2010, Paver Pro stopped advertising with Yelp. SAC ¶102. Within two weeks, Paver Pro's overall star rating fell from 4 to 3 stars. SAC ¶101-03. As a result, Paver Pro suffered injuries to its reputation, sales, business revenues, and assets, and experienced a decline in page views. SAC ¶105.

Yelp's conduct caused each of the named Plaintiffs' overall Yelp star rating to decline and that resulted in a decrease in Plaintiffs' customers, a loss of sales, revenues and assets, and reputational injuries. SAC ¶¶ 54, 73, 91-92, 105. Sponsor Plaintiffs seek injunctive and restitution relief for payments they made to Yelp due to its unlawful extortion and unfair conduct. SAC ¶122, 126. Non Sponsor Plaintiffs seek injunctive relief ordering Yelp to cease its UCL violations. SAC ¶124.

## III. ARGUMENT

### A. Legal Standards

A challenge to Article III standing is raised in a motion to dismiss under Rule 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). On a Rule 12(b)(6) motion to dismiss, the court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); *see also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This is true no matter how improbable the facts alleged are, or how unlikely and remote the prospects for recovery. *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989).

A Rule 12(f) motion "is not the proper vehicle for dismissing portions of a complaint when the 12(f) challenge is really an attempt to have portions of the complaint dismissed; such a challenge is better suited for a 12(b)(6) motion to dismiss . . . ." *Swift v. Zynga Game Network*, No. C 09-05443 SBA, 2010 WL 4569889 at *10 (N.D. Cal. Nov. 3, 2010) (denying motion to strike Rule 23 class allegations). Class action allegations are not the type of "redundant, immaterial, impertinent, or scandalous matters" that Rule 12(f) is designed to address. Fed. R. Civ. P. 12(f).

Defendant's motions should be denied because 1) Plaintiffs have standing; 2) Plaintiffs have sufficiently pled UCL claims; and 3) Plaintiffs' class allegations satisfy Rule 23.

**B. Plaintiffs Have Standing Under Article III and the UCL**

**1. Plaintiffs Have Alleged Facts Sufficient to Confer Standing Under Article III**

Article III of the Constitution confers standing on a party if the party can demonstrate: "(1) it has suffered 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.*, 528 U.S. 167, 180-81 (2000). In the context of a class action, "standing is satisfied if at least one named plaintiff meets the requirements." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1215 n.1 (9th Cir. 2008). Due to the Rule 23 requirements, "[t]he trial court generally need not address the final question of whether the class itself, after certification, has standing." *In Re Tobacco II Cases*, 46 Cal. 4th 298, 319 (2009).

**a. All Plaintiffs' Reputations were Harmed, They Lost Customers and Business and Sponsor Plaintiffs Lost Money Paid for Yelp Advertising**

Yelp's Motion does not address Plaintiffs' alleged injuries of reputational harm and thus concedes they are sufficient for standing purposes. The Supreme Court has held that the risk of harm to one's reputation constitutes a cognizable injury "sufficient to confer article III standing." *Humphries v. Los Angeles County*, No. SACV 03-697 JVS, 2005 WL 6431760 at *6, *rev'd on other grounds* in *Los Angeles County v. Humphries*, __U.S.__ (2010), 131 S. Ct. 447 (2010); *see also Meese v. Keene*, 481 U.S. 465, 475 (1987) (harm to plaintiff's reputation constitutes cognizable injury); *Presbyterian Church v. United States*, 870 F.2d 518, 522-23 (1989) (same). All Plaintiffs have alleged damage to their reputation caused by Yelp's conduct, including the content of Yelp-drafted reviews and the impact from Yelp's manipulation of their overall star ratings. SAC ¶¶24, 40, 50, 73, 90, 92, 105. This is more than sufficient for Article III standing.

Likewise, Yelp's Motion ignores Sponsor Plaintiffs' allegations that they lost money because they are forced to pay monthly advertising fees to Yelp to prevent Yelp's manipulation of

their business's reviews. SAC ¶¶9, 83, 104. It is undisputed that a loss of money paid to a defendant constitutes injury in fact under Article III. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010).

Yelp instead focused its Motion only on Plaintiffs' injuries relating to lost customers, revenues and business assets. *See* Defendant's Motion to Dismiss (hereafter "MTD") at 13. Yelp contends that the allegations are factually insufficient[3] because no "single lost customer" is identified and there are "no details or factual support for their speculative claims of injury." *Id.* As an initial matter, Plaintiffs need not identify or prove the precise number of customers they have lost at this stage. *See, e.g., Presbyterian Church v. United States,* 870 F.2d 518, 523 (1989) (for pleading purposes, injury established due to allegation of decrease in congregants' participation was not speculative but palpable and direct).

And contrary to Yelp's assertion, the Complaint is replete with detailed, factual allegations demonstrating Plaintiffs' loss of customers and business revenue. For example, Plaintiffs do not simply allege that they lost customers, Plaintiffs explain how the loss is linked to Yelp's conduct. Yelp manipulates the business's overall star ratings by posting Yelp-drafted negative reviews on Plaintiffs' business review pages, which in turn, causes fewer customers to patronize their businesses. SAC ¶¶10, 34, 39, 40, 54, 73, 105. The end result is that Yelp's conduct causes a decrease in Plaintiffs' business revenues, sales, and assets. *Id.* Similarly, Yelp's manipulation of Plaintiffs' reviews causes fewer Yelp users to view Plaintiffs' business's Yelp pages, which correlates almost directly to a drop in income. SAC ¶ 48.

Yelp's legal argument fares no better because it relies heavily on an inapposite case, *Two Jinn, Inc. v. Gov't Payment Serv., Inc.*, 2010 WL 1329077 (S.D. Cal. April 1, 2010). In *Two Jinn*,

[3]/ Yelp does not contend that damage to business assets and diminution of revenues would not constitute injury in fact. Plaintiffs' allegations that Yelp manipulated and posted reviews, which caused them to lose customers and caused harm to their business assets and revenues constitutes a distinct and palpable injury. *See Presbyterian Church*, 870 F.2d at 522 (allegation that INS surveillance chilled congregants from attending, which in turn interfered with churches' ability to carry out ministry because of alleged decrease in membership was distinct and palpable injury); *Overstock.Com, Inc., v. Gradient Analytics, Inc. et al.*, 151 Cal. App. 4th 688, 716 (2007) (for purposes of UCL, alleged diminution in value of assets and decline in market capitalization constitutes injury in fact).

the plaintiff was a licensed bail agent who brought a UCL claim against a bail agent who was operating unlawfully because he was not licensed. Not only did the defendant not take any action against the plaintiff, there was no interaction whatsoever between them. Plaintiff's claimed injury was that some of the defendant's customers would have purchased bail from the plaintiff instead. The court found the injury was conjecture and too attenuated because customers could have purchased bail from other bail services as well, not just from the plaintiff. These facts have no application to the instant matter where, as discussed above, Plaintiffs have set forth a host of concrete injuries they sustained, which resulted *directly* from Yelp's conduct.[4] *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003) (for standing, "[t]he plaintiff must show that he himself is injured by the challenged action of the defendant).

**b. Yelp's Conduct Is Directly Linked to Plaintiffs' Injuries**

**Sponsor Plaintiffs**

As to the Sponsor Plaintiffs, Yelp contends that Plaintiffs have not established a causal connection between their injuries – the advertising payments made to Yelp to avoid Yelp's manipulation of their reviews – and Yelp's conduct. It is plain from the chain of events set forth in the Complaint, however, that Plaintiffs have done just that.

For example, Plaintiff Chan alleges that 1) prior to being contacted for advertising, her office received a 4.5 to 5 overall star rating from Yelp [SAC ¶76]; 2) that *just days* after she declined to purchase advertising, Yelp removed nine of her top-rated 5 star reviews from her Yelp review page which caused her overall Yelp star rating to decline [SAC ¶¶77-78, 80]; 3) that Yelp subsequently told Chan that it "tweeks" the ratings every so often, and that it could help her if she

[4]/ Other cases Defendant relies on are similarly distinguishable. In *Sanders v. Apple, Inc.*, 672 F.Supp.2d 978, 985 (2009), for example, the Court found a lack of standing for one of the plaintiffs based on a *failure to establish a causal connection* (rather than the injury in fact element) between the defendant's alleged conduct and the injury because Plaintiff purchased the product not based on the alleged misrepresentations, but because of customer loyalty. Similarly, in *Lee v. Capital One Bank*, No. C 07-4599, 2008 WL 648177 at *3 (N.D. Cal. Mar. 5, 2008), the court found that the plaintiff lacked standing in part based on a challenge to an alleged unconscionable arbitration provision where the plaintiff hadn't attempted to arbitrate, thereby making a "hypothetical assumption about what may or may not transpire."

paid for advertising [SAC ¶81][5]; 4) that Chan believed Yelp removed her positive reviews to cause her to fear that if she did not purchase advertising, Yelp would keep her business's overall star rating low [SAC ¶ 82]; and 5) that as a result, and out of fear of further manipulation, Chan agreed to pay Yelp for advertising for one year [SAC ¶83]. These factual allegations plainly demonstrate that Chan suffered injury by paying money to Yelp to avoid Yelp's unlawful, unfair and manipulative tactics, which is the causal connection between Plaintiff's harm and Yelp's conduct.

Similarly, Paver Pro also alleges that it purchased advertising [SAC ¶99] – due to Yelp's manipulation of its reviews [SAC ¶¶ 95-98] – so that positive reviews would be reinstated [SAC ¶¶ 99], which they were [SAC ¶100]. Like Chan, Paver Pro's lost advertising costs are directly related to the unlawful and manipulative conduct that Plaintiffs allege Yelp engaged in.

Yelp's contention that Sponsor Plaintiffs failed to allege "any plausible nexus between their claims of 'lost business' or harm to their 'reputation'" and Yelp's wrongful conduct also fails. MTD, 15.[6] Sponsor Plaintiffs allege sufficient facts demonstrating precisely how Yelp's wrongful manipulation of their overall star rating directly lowered the number of customers (and the corresponding revenue decrease) as well as causing fewer people to view their Yelp pages.

Chan alleges that due to Yelp's manipulative conduct, numerous star reviews were removed from her Yelp review page, causing her overall star rating to fall. *See, e.g.*, SAC ¶90 ("As of spring 2010, Yelp had filtered 77 reviews of Chan's office, 75 of which were positive reviews"). This – combined with the fact that consequently Chan had fewer new patients and experienced a correlating decline in business revenues – is more than sufficient to create a plausible nexus that Chan suffered both reputational harm due to Yelp's conduct and a corresponding decrease in business assets and revenues. *Focus on the Family*, 344 F.3d at 1273

---

5/ Contrary to Defendant's assertion that Plaintiffs "utterly fail to allege that Yelp threatened (or even implied) that it would manipulate the reviews of Sponsor Plaintiffs' businesses," the suggestion that Yelp could "tweek" Chan's reviews if she advertised, combined with its manipulation of her reviews, plainly constitutes a threat, implied or otherwise, that Yelp manipulates reviews in a manner that does not comply with its Review Terms. *See* supra Section 3(a)(i).

6/ Notably, Yelp does not challenge the fact that Plaintiffs' loss of sales, revenues and/or assets are sufficient to confer standing.

(harms that flow indirectly are fairly traceable); *see also* SAC, ¶¶91-92; *Overstock.Com, Inc.*,151 Cal.App.4th at 716 (alleged diminution in value of assets and decline in market capitalization constitutes injury in fact).

Similarly, Paver Pro alleges that as a result of Yelp's conduct (in removing positive reviews) that it experienced a decline in its overall Yelp star rating two weeks after it stopped advertising [SAC ¶102-03], which in turn caused fewer customers to view Paver Pro's Yelp page, and fewer customers to patronize the business, which caused a decrease in Paver Pro's revenues [SAC ¶¶103-05]. Paver Pro also alleges that the posting of negative reviews by Yelp and filtering of positive reviews – because it did not advertise – caused harm to its reputation. *See* SAC ¶105. Like Chan, Paver Pro's harm is sufficiently connected to Yelp's conduct to confer standing.

**Non Sponsor Plaintiffs**

As a preliminary matter, Yelp contends that it is protected from Non Sponsor Plaintiffs' allegations because of the Communications Decency Act ("CDA"). *See* MTD, 15. The CDA provides most internet services with "immunity from liability for publishing false or defamatory material so long as the information was provided by another party." *Hy Cite Corp. v. Badbusinessbureau.com*, LLC, 418 F. Supp. 2d 1142, 1147 (2005). Here, Plaintiffs' allegations include Yelp's creation of content and manipulation of content, such as the overall star ratings, which is not protected by the CDA.

An information content provider, meaning "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service," is not entitled to immunity. 47 U.S.C. § 230(c)(1). "This is a broad definition, covering even those who are responsible for the development of content *only 'in part*.'" *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1197 (2009) citing *Universal Commc'n Sys. Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007) (emphasis added).

Yelp's reliance on the CDA is misplaced because Plaintiffs do not base their allegations on the content solely provided by third-party users. *Se,e e.g.*, *Carafano v. Metrosplash*, 339 F.3d 1119, 1124 (9th Cir. 2003) (extending CDA immunity to website when third party provides the

essential published content at issue). Relying on the CDA, Yelp intentionally misconstrues Plaintiffs' SAC, writing that "Levitt and C&D contend that their 'reputation' was harmed 'due to the posting of negative reviews by consumers'" while in fact, the paragraphs cited by Yelp relate to Plaintiffs' allegations regarding *Yelp's conduct in creating* the overall star ratings of Plaintiffs' businesses based on Yelp's own posting and filtering of reviews (including those Plaintiffs allege Yelp drafted). *See SAC* ¶¶ 53, 65, 71; *see also* ¶¶ 7, 33-34, 49. It is well-settled that allegations that a defendant authored or created the wrongful content (even in part) are in fact actionable under the CDA. *See, e.g., Hy Cite Corp*, 418 F. Supp. 2d at 1149 ("This argument ignores Plaintiff's allegations that the wrongful content appears on the Rip-Off Report website in editorial comments created by Defendants and titles to Rip-Off Reports, which Defendants allegedly provide . . . and that defendants "produce original content contained in the . . . reports" and "solicit individuals to submit reports with the promise that individuals may ultimately be compensated for their reports").

Moreover, Plaintiffs allege that Yelp – in furtherance of its unlawful manipulation tactics – either created false reviews and/or compensated or acted through others that did so. *See* SAC ¶¶ 33-34. Websites that help to develop unlawful content are not protected under the CDA. *See F.T.C. v. Accusearch.*, 570 F.3d at 1200 (denying CDA immunity to publisher that intended to generate confidential information protected by law) (citing *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008) (denying CDA immunity to online roommate-matching service for development of discriminatory preferences contained in its users' personal-profile pages despite fact that discriminatory content originated from third parties)). *See also Swift v. Zynga Game Network, Inc., et al.*, No. C 09-05443 SBA, 2010 WL 4569889 at *5 (N.D. Cal. Nov. 3, 2010) (denying CDA immunity when face of complaint showed that Zynga was responsible, "in whole or in part, for creating or developing the special offers at issue"). Given the content of Plaintiffs' allegations, Defendant is not entitled to CDA immunity.

Defendant also maintains that Non Sponsor Plaintiffs lack standing because they have not alleged a causal connection between Yelp's conduct and the injuries they suffered. *See* MTD, 14.

As Defendant's own cited-authority instructs, "standing may be based on 'nonconclusory factual content,' and reasonable inferences from that content in the complaint that are 'plausibly suggestive' of the existence of standing." *Coal. for a Sustainable Delta v. FEMA*, 711 F. Supp. 2d 1152, 1158-59 (2010). As to the Non Sponsor plaintiffs, Defendant argues that Plaintiffs have not alleged facts that "create a plausible inference" that the injuries they suffered resulted from Yelp's conduct. The chain of events in the SAC, however, demonstrates otherwise.

Just two days after Plaintiff Levitt declined to purchase advertising, six out of seven of his top-rated 5 star reviews were removed from his business's Yelp review page, which lowered his overall star rating to 3.5 stars. SAC ¶49. The next month, his business's Yelp review page had 158 page views as opposed to the 261 page views he experienced during the previous month, and his income – which correlated almost directly to Yelp page views – declined. *Id.* For purposes of pleading a causal connection, "even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Focus on the Family,* 344 F.3d at 1273. Moreover, given the sharp decline in Levitt's star reviews and the correlating decline in page views, it is reasonable to conclude from those facts alone that Levitt's reputation suffered from Yelp's conduct. Levitt has also alleged sufficient facts to make it plausible that Yelp's conduct caused the decline in revenue his business experienced when his page views declined after Yelp manipulated Levitt's reviews. *See* SAC ¶50.

Likewise, Cats and Dogs alleges that negative and inflammatory reviews were posted which violated the Review Terms and which were removed by Yelp for that reason. SAC ¶¶59-60. However, immediately after Cats and Dogs declined to purchase advertising, Yelp re-posted the negative reviews even though they violated the Review Terms. SAC ¶65. Cats and Dogs also alleges that Yelp created and posted its own negative reviews regarding Cats and Dogs after Cats and Dog's decided not to purchase advertising. SAC ¶71. After declining to purchase advertising, a public Yelp.com search for "veterinarian in Long Beach" displayed a highly negative Cats and Dogs review, which violated the Yelp Review Terms. SAC ¶¶70-71. Based on these factual allegations, *a plausible suggestion* can certainly be made that Yelp's conduct caused a decrease in

Cats and Dog's business revenues, page views, sales, and assets and injured its reputation. *See* SAC ¶73.

**c. Injunctive and Restitutionary Relief Will Remedy Plaintiffs' Injuries**

Yelp's *entire argument* that Plaintiffs fail to allege a redressable injury stems from its misstatement of Plaintiffs' claims. Yelp mistakenly maintains that Plaintiffs' allegations stem from the content of third-party users, and that, as a result, any adverse decision would be protected under the First Amendment or by the CDA. As set forth above (and as clearly articulated in the SAC), however, Plaintiffs in no way challenge the content posted by third-party users. Instead, Plaintiffs' allegations stem from Yelp's unfair and unlawful conduct as it relates to 1) Yelp's posting of reviews that it drafts or directs and 2) Yelp's development of an overall star-rating it assigns to businesses, which although purportedly made up of third-party user content is actually developed entirely by Yelp (either by using third-party reviews it wishes to factor in or by using reviews Yelp itself posted). None of this content is protected under the CDA or the First Amendment. *See, e.g., Overstock*, 151 Cal. App. 4th at 714 ("But Overstock is not seeking to enjoin speech; it is seeking to enjoin unfair business practices"). Thus, Plaintiffs' injuries can in fact be redressed by injunctive and restitutionary relief.

**2. Plaintiffs Have Alleged Facts Sufficient to Confer Standing Under the UCL**

In addition to challenging Plaintiffs' standing under Article III, Defendant also argues that Plaintiffs do not have standing under the UCL. Under the UCL, a person bringing an action must establish that he or she "has suffered injury in fact and has lost money or property as a result" of the violation. Cal. Bus & Prof. Code §§ 17204. Injury in fact requires either "a distinct and palpable injury suffered as a result of the defendant's actions" or is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical." *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590 (2008) (citing *Buckland v. Threshold Enters.*, 155 Cal.App.4th 798, 812 (2007)). A loss of money or property as a result of a defendant's unfair or unlawful conduct requires an economic loss, at least in part. *See generally Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 147 (2008)

(moral injury did not support UCL action); *see also Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 853 (2008) ("A loss is . . . the diminution of value . . . in an unexpected or relatively unpredictable way.").

**Sponsor Plaintiffs**

Defendant maintains that the Sponsor Plaintiffs – those who purchased advertising – did not suffer injury in fact because they "fail to allege that they did not receive the benefits of advertising that they contracted to receive from Yelp."[7] MTD, 17. Defendant's theory makes no sense in relation to the SAC. Plaintiffs do not allege that their harm stemmed from purchasing advertising from Yelp and not receiving the full benefit of the package (or, for example, that they were in any way misled by Yelp's representations regarding the contents of an advertising package they voluntarily purchased). Instead, Plaintiffs allege that their injuries stemmed from Yelp's unlawful and unfair conduct, which left them with no choice but to purchase advertising to avoid Yelp's manipulation of reviews and overall star rating. Plaintiffs' injury is the money lost to the advertising payments they felt forced to make to Yelp to avoid Yelp's manipulations. A monetary loss constitutes injury in fact for purposes of the UCL, and Plaintiffs have indisputably satisfied the standing requirement. *See Hall*, 158 Cal. App. 4th at 852 (section 17204 standard satisfied when plaintiff has "expended money due to defendant's acts of unfair competition").

**Non Sponsors**

Defendant's contention that Non Sponsor Plaintiffs must allege "an outlay of funds tied to any business dealings with Yelp" (MTD, 17) is misplaced because Non Sponsor Plaintiffs are only seeking injunctive relief. Injunctive relief is available in UCL actions and does not require that the party also be entitled to restitution. *See, e.g.*, *Finelite, Inc., v. Ledalite Architectural Prods.*, No. C-10-1276 MMC, 2010 WL 3385027 at *1-2 (N.D. Cal. Aug. 26, 2010) (plaintiff's allegation that

[7]/ Yelp's sole support for its theory is *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009). In *Birdsong*, plaintiffs alleged that Apple's iPod was defective because it posed an unreasonable risk of hearing loss to users, despite the fact that plaintiffs themselves did not allege hearing loss. *Id*. at 955, 960. Because Apple made no representation regarding "safety" in the bargain (and in fact, included a warning regarding volume level) and plaintiffs did not suffer economic harm from receiving an allegedly reduced-in-value iPod, UCL standing was denied. *Id*. at 961. *Birdsong* is obviously inapposite here.

advertising statement by competitor caused diversion of sales to competitor and caused plaintiff to lose sales sufficient to state a claim for injunctive relief under the UCL). *See also G&C Auto Body, Inc. v. GEICO Gen. Ins. Co.*, 2007 WL 4350907, at *3-5 (N.D. Cal. 2007) ("although plaintiffs could not establish entitlement to restitution, plaintiffs had standing to seek injunction based on plaintiffs' 'loss of business caused by [d]efendants' steering of customers away from plaintiffs' [businesses]"); *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1083 (C.D. Cal. 2006) (to obtain restitution plaintiffs need to show that defendant took money directly from them but "no such burden exists where plaintiff seek only injunctive relief under § 17200").

Defendant's reliance on *Clayworth v. Pfizer*, 49 Cal.4th 758, 788 (2010) for the proposition that Plaintiffs have not alleged an injury unless they allege an "outlay of funds" tied to business dealings with Yelp fares no better. As discussed above, there is no requirement that Plaintiffs allege an outlay of money or property. Yelp's argument does not account for the fact that by being on Yelp, and being solicited for advertising, the parties had business dealings.

Contrary to case law, Yelp also argues that Plaintiffs' claims of loss of sales, revenues and/or assets do not constitute injury in fact for purposes of UCL standing. "'[U]nlawful, unfair or fraudulent business practices' resulting in diminution in value of [] assets and decline in market capitalization . . . meets the statutory requirement of 'injury in fact' resulting from defendants' misconduct." *Overstock.com*, 151 Cal. App. 4th at 714, 716 (holding that retailer had standing under UCL for action concerning defendant's "intentional dissemination of negative reports on Overstock"). Here, Non Sponsor Plaintiffs are seeking injunctive relief – not restitution or damages for the decline in their business assets. Accordingly, Defendant's reliance on *United States v. Sequel Contractors, Inc.*, 402 F. Supp. 2d 1142, 1156 (C.D. Cal. 2005) is irrelevant. In *Sequel*, the UCL claim was dismissed because the party sought a claim for restitution (rather than injunctive relief) and because plaintiff was actually seeking damages for the decline in its business.[8]

---

[8]/ Likewise, Defendant's argument that Plaintiffs need to allege more than an "expectation of profit" is without merit. MTD, 17.

**3. Plaintiffs Have Properly Stated a Claim for Unfair Competition**

The UCL prohibits conduct that is "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. "The purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1359 (2010) (internal citations omitted). Under the UCL, "a business practice need only meet one of the three criteria to be considered unfair competition." *Id.* (citing *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1471 (2006)). "Therefore, an act or practice is 'unfair competition' under the UCL if it is forbidden by law or, even if not specifically prohibited by law, is deemed an unfair act or practice." *Id.* (citing *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1335 (2009)).

**a. Unlawful Conduct**

As predicates for the "unlawful" prong of the UCL, Plaintiffs allege that Defendants "unlawfully attempted to and/or did in fact commit extortion as set forth in California Penal Code sections 518, 519, 523, 524 and/or the Hobbs Act." *See* SAC ¶121. Pursuant to California Penal Code section 518, extortion is defined as "obtaining of property from another, with his consent … induced by a wrongful use of . . . fear . . . ." "Fear, such as will constitute extortion, may be induced by a threat . . . to do an unlawful injury to the . . . property of the individual threatened or of a third person . . ." Cal. Penal Code § 519. Attempted extortion is actionable under California law.[9] The Hobbs Act definition of extortion is substantially similar to the California Penal Code. *See, e.g.*, 18 U.S.C. § 1951(b)(2).

As this Court articulated, in the case cited by Defendant, with regard to pleading "[u]nder the UCL unlawful prong, it is not necessary that plaintiffs allege violation of the predicate laws with particularity; they must at a minimum, however, identify the statutory or regulatory

9/ *See* Cal. Penal Code § 523 ("Every person who, with intent to extort any money or other property from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in Section 519, is punishable in the same manner as if such money or property were actually obtained by means of such threat"); Cal. Penal Code § 524 ("Every person who attempts, by means of any threat, such as is specified in Section 519 of this code, to extort money or other property from another is punishable by imprisonment . . .").

provisions that defendants allegedly violated." *See In re Actimmune Mktg. Litigation*, No. C 08-02376 MHP, 2009 WL 3740648 at *15 (N.D. Cal. Nov. 6, 2009). As set forth below, Plaintiffs have not only identified the statutory provisions that Yelp allegedly violated (which, per *Actimmune* should satisfy the minimum pleading requirement), they also pleaded adequate facts giving rise to the violation.

**i. Yelp Threatened Unlawful Injury to Plaintiffs' Property**

Defendant argues that Plaintiffs fail to allege that Yelp threatened to do unlawful injury to Plaintiffs' property (thereby constituting fear). Plaintiffs, however, specifically allege that Yelp 1) removed positive reviews, thereby changing Plaintiffs' overall star ratings immediately after Plaintiffs declined to purchase advertising (or terminated their contracts) as a threat to cause Plaintiffs to fear that if they did not purchase advertising, that more reviews would be removed [SAC ¶¶48-49, 53, 82-85, 90, 103]; 2) that Yelp maintained negative reviews on Plaintiffs' Yelp review pages even though the reviews violated the Yelp Review Terms as a threat to cause Plaintiffs to fear that if they did not purchase advertising, the negative reviews would remain, thereby lowering the overall star rating of businesses [SAC ¶¶65-66, 86, 88]; 3) that Yelp manufactured its own reviews as a threat to cause Plaintiffs to fear that if they did not purchase advertising, the negative reviews would remain [SAC ¶71]; 4) that Yelp stated that paying for advertising would help Plaintiff's overall star rating because Yelp "'tweaks' the ratings every so often," that "*Yelp manually adds and removes reviews based on its own discretion*," and that Yelp employees had the ability to remove reviews from a business's Yelp page [SAC ¶¶78, 81, 89].

It is well-settled that threats – sufficient to constitute extortion or attempted extortion – may be implied. *See, e.g.*, Cal. Penal Code § 523 (threats may be implied); *see also United States v. Lisinski*, 728 F.2d 887, 891 (1984) ("The implied threat will usually be that, unless the victim cooperates with the extortionist, economic loss will result"); *United States v. Rivera Rangel*, 396 F.3d 476, 484 (1st Cir. 2005) (In context of extortion through fear of economic loss, "we note that it is immaterial that Rivera never explicitly threatened Ventura"). In fact, as described by one

court, vague and implied threats are not only actionable, but sometimes more effective. Indeed,

> [a]n experienced extortionist does not find it necessary to designate specifically what he intends to do as a means of terrifying his prey … the more vague and general the terms of the accusation, the better it would serve the purpose of the accuser in magnifying the fears of his victim, and the better also it would serve to protect him in the event of the failure to accomplish his extortion, and of a prosecution for his attempted crime … [n]o precise words are necessary to convey a threat. Conduct takes its legal color and quality more or less from the circumstances surrounding it.

*People v. Oppenheimer*, 209 Cal. App. 2d 413, 422 (1963) (internal citations and quotations omitted). Here, the circumstances – Yelp's manipulation of Plaintiffs' reviews shortly after Plaintiffs refused to purchase or terminated their advertising packages and disclosure of its employees' ability to manipulate reviews – are sufficient to show Yelp's acts of extortion or attempted extortion.

The cases Defendant relies on in support of its argument that Plaintiffs fail to allege the wrongful use of fear are distinguishable. *See, e.g.*, *Sosa v. DIRECTTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006) (prelitigation demand letters are not wrongful use of fear unless sham); *Rothman v. Vedder Park Mgmt.*, 912 F.2d 315, 318 (9th Cir. 1990) (warnings that rent will be raised and landlord will not continue to pay utility bills if residents decide not to re-sign lease is not wrongful use of fear). Plaintiffs' SAC makes it clear that Yelp's conduct in no way resembles the lawful conduct – such as sending a prelitigation demand letter or an intent to raise rent – alleged in the cited cases. Moreover, contrary to Defendant's assertion, the crux of Plaintiffs' allegations is not that Defendant *offered* Plaintiffs benefits if they advertised with Yelp, but that Defendant attempted to force Plaintiffs (by implicating it could change the reviews and by acting on Plaintiffs' fears of negative ratings) to pay Yelp for advertising services by manipulating their reviews and overall star ratings.[10]

---

[10]/ Defendant's cases on this point are similarly irrelevant and distinguishable. In *Sigmond v. Brown*, 645 F. Supp. 243, 246 (C.D. Cal. 1986) for example, the plaintiff failed to establish a claim for extortion (alone) on summary judgment because the offer to provide the plaintiff with more favorable reviews if the plaintiff provided referrals was not an attempt to obtain *Plaintiff's property* through the wrongful use of threats or fear and there was no indication

**ii. Non Sponsor Plaintiffs' Attempted Extortion Claim Does Not Require that Plaintiffs Provided Property to Yelp.**

Yelp's contention that Non Sponsor Plaintiffs fail to allege that they provided property to Yelp, and thus cannot demonstrate extortion is based on a misreading of the SAC. Non Sponsor Plaintiffs allege that Yelp committed attempted extortion. *See* SAC ¶123 ("For Non Sponsor Class members, Defendants took a direct ineffectual step towards committing extortion by attempting to make the Class members fear that if they did not purchase advertising, their overall star rating and/or public reviews would decline."). Attempted extortion does not require that the victim provide property to the extortionist.[11] *See, e.g.*, *People v. Sales*, 116 Cal. App. 4th 741, 749 (2004) (describing elements of attempted extortion). As such, Non Sponsor Plaintiffs may pursue a UCL claim for unlawful conduct for attempted extortion.

**iii. Sponsor Plaintiffs Purchased Advertising because of Reasonable Fear.**

The SAC contradicts Defendant's argument that Sponsor Plaintiffs cannot show extortion because they don't allege plausible facts showing that "'fear' induced by a threat of unlawful injury was the 'controlling cause' of their decisions to purchase advertising.[12] MTD, 21. Chan

---

that Plaintiff actually *consented*. Here, Plaintiffs have alleged that Yelp attempted to (and did) obtain property (advertising payments) and that in the extortion cases, Sponsor Plaintiffs actually consented. In *Wolk v. Green*, 516 F. Supp. 2d 1121, 1129-30 (N.D. Cal. 2007), the plaintiff failed to allege extortion when the attorney threatened to cease representation if the plaintiff did not provide more funds." Here, Plaintiffs do not allege that Yelp was providing them with a service that Yelp threatened to cease; instead, Plaintiffs allege that Yelp threatened them so they would pay for the service. Finally, in *People v. Anderson*, 75 Cal. App. 365, 374-75 (1925) (disapproved on other grounds *In re Wright*, 65 Cal. 2d 650 (1967)), the offer to dismiss charges in exchange for payments was not extortion because the defendant could not threaten to accuse the men of a crime because they had already been charged with that crime. *See, e.g.*, Cal. Penal Code § 519 (fear constitutes threat of ***accusing*** individual of crime). Unlike *Anderson*, where there could be no fear, the ongoing manipulations of Plaintiffs' reviews constituted continuing unlawful injury to Plaintiffs' property, which could only be avoided by paying Yelp.

[11]/ As explained in the previous section, Plaintiffs alleged the existence of a threat of injury or wrongful use of fear.

[12]/ Defendant once again relies on an inapposite case. In *Chan v. Lund*, 188 Cal. App. 4th 1159, 1171 (2010), the court found – on a motion to enforce a settlement – that the plaintiff's claim of extortion failed because 1) the plaintiff's attorney's threat to withdraw unless the plaintiff signed the settlement agreement was undermined by the evidence and 2) even if the plaintiff's allegations were true, extortion requires that the victim surrender his or her property to the extortionist, but there, the property (claims to the lawsuit) went to defendants.

alleges she purchased advertising – "due to representations made by [the Yelp representative] and the immediate decline in the reviews of her business" and "out of fear of further manipulations . . . so that Yelp would reinstate the positive reviews." SAC ¶¶82-83. She also alleged that she believed Yelp's actions constituted extortion. SAC ¶85. Similarly, Paver Pro alleges it "purchased advertising from Yelp so that the positive reviews it received would be reinstated on the Paver Pro Yelp review page" following Yelp's removal of positive reviews, which was done "as a threat to cause Paver Pro to fear that if it did not purchase advertising" its rating would remain low. SAC ¶¶98-99. These allegations are sufficiently pled.

In addition, Defendant argues that Sponsor Plaintiffs[13] failed to allege facts showing that their fear was reasonable, an additional requirement under the Hobbs Act (rather than the California Penal Code). Plaintiffs do, however, allege facts to show that their fear was reasonable because they have pleaded facts showing that they believed that Yelp – through its website, which attracts millions of consumers – had the power to harm them, through the manipulation of their reviews, and would exploit that power to their detriment based on whether or not they advertised. *See, e.g., City and County of San Francisco v. Tutor Saliba Corp*., No. C 02-5286 CW, 2005 WL 645389 at * 4 (N.D. Cal. March 17, 2005) (For Hobbs Act, "[t]he victim must have a reasonable belief that the alleged extortionist had the power to harm the victim and would exploit that power to the victim's detriment"). Plaintiffs' allegations that they suffered personal (reputational) harm, economic harm, and lost customers due to Yelp's conduct are sufficient to support the conclusion that Plaintiffs reasonably feared Yelp's conduct. *See United States v. Granados*, 142 F.3d 1016, 1021 (1998) (evidence of personal and economic damage and lost customers due to published articles sufficient to support finding of reasonable fear of economic harm).

---

13/ Presumably, Yelp challenges whether Sponsor Plaintiffs' fear was reasonable given that the extortion claim applies to those who actually purchased advertising. *See United States v. Marsh*, 26 F.3d 1496, 1501 (9th Cir. 1994) ("For attempted extortion, on the other hand the victim's state of mind is not important. What is important is that the defendant attempted to instill fear in the victim.").

**b. Unfair Conduct**

California's unfair competition laws are "sweeping, embracing 'anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Rubin v. Green*, 4 Cal. 4th 1187, 1200 (1993) (quoting *Barquis v. Merchants Collection Ass'n.* 7 Cal. 3d 94, 113 (1972). The UCL applies to anti-competitive business practices, injuries to consumers, and has as a major purpose, "the preservation of fair business competition." *Barquis*, 7 Cal. 3d at 101. A business practice alleged under the UCL's "unfair prong" may qualify as an unfair business practice, even if it does not violate another law. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999). The scope of the unfair prong is broad: "[t]he legislature . . . intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity may occur. Indeed, . . . the section was intentionally framed . . . precisely to enable judicial tribunals to deal with the innumerable 'new schemes which the fertility of man's invention could contrive.'" *Id*. at 181 (internal quotations and citations omitted).

Unfair competition – at least in non-consumer cases is – "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws . . . or otherwise threatens or harms competition." *Cel-Tech Commc'ns*, 20 Cal. 4th at 187, n.12 (discussing *Smith v. State Farm Mutual Auto. Ins*. Co, 93 Cal. App. 4th 700, 718-19 (2001) (for unfair competition "the court must we weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim") and *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984) (unfair business practice is one that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers")).

Plaintiffs pled unfair competition by alleging facts showing that Yelp represents itself, deceivingly, to businesses and the public generally as being a non-biased third-party review system, but that in actuality its review system is directly linked to whether a business pays Yelp to advertise. SAC ¶¶3-8. Plaintiffs also allege that Yelp forces small businesses to pay for

advertising because if they choose not to, the business's overall star rating, which is created by Yelp, will decline. SAC ¶¶8-9, 37. This, is turn, impacts a business's reputation and profits and has devastated small businesses. SAC ¶¶10, 125. When Plaintiffs complained about Yelp's conduct, Yelp retaliated against them by removing positive reviews or reinstating negative reviews to their Yelp review pages. *See, e.g.*, SAC ¶¶ 71, 86, 125. These underlying facts show that Yelp's conduct actually harms competition because Yelp is able to manipulate public and competitor reviews to generate money for itself and to the detriment of class members. SAC ¶¶72, 120; *see, e.g.*, *Cel-Tech*, 20 Cal. 4th at 187 (stating test). As alleged in the SAC, Yelp's conduct is immoral and unethical, and the harm to class members strongly outweighs any benefits to Yelp or competition generally. SAC ¶125.

Yelp engages in these deceitful and unfair practices, while attempting to hide its wrongful conduct by pointing to its Review Terms and in particular, its automated review filter. SAC ¶6. Yelp's extortionist and retaliatory conduct is precisely the type of activity the "unfair" prong of the UCL was intended to encompass. *See, e.g.*, *Cel-Tech*, 20 Cal. 4th at 181 ("When a scheme is evolved which on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because the scheme is an original one") (internal quotations omitted). In line with Defendant's cited authority, each Plaintiff pleads that Yelp coerced (or attempted to coerce) them into paying Yelp for advertising. *See* SAC ¶37, 49, 66, 71, 81-82, 98, 103; *Leong v. Square Enix of Am. Holdings, Inc*., 2010 WL 1641364 at *7 (C.D. Cal. April 20, 2010) (noting plaintiff did not plead UCL because no facts suggested "they were in any way coerced or forced to spend any money at all by Defendants").

**C. Plaintiffs' Claims Should Not be Dismissed or Stricken**

**1. It is Improper to Dismiss Plaintiffs' Claims**

There is no basis for dismissing or striking Plaintiffs' claims because, as set forth above, the named Plaintiffs have standing under both the UCL and Article III and thus their class claims should survive. Moreover, because Plaintiffs have adequately pleaded claims under the UCL, the

SAC should not be dismissed without leave to amend.[14]

**2. Plaintiffs Have Alleged Sufficient Subclasses**

Defendant's request that the Class allegations be dismissed and/or stricken are premature and without merit. Plaintiff's subclass definitions are sufficient because the subclass members will be readily identifiable from Defendant's electronic records. To identify the members of each subclass, one would simply need to determine which class members Yelp communicated with regarding advertising (likely traceable through Yelp), which reviews Yelp manipulated in a manner that did not comply with the Review Terms (traceable through electronic data), and which Sponsor class members paid Yelp for advertising thereafter (also tracked through Yelp records). Accordingly, Defendant's contention that Plaintiff failed to allege an ascertainable class because individual issues predominate lacks merit.

Defendant argues that the class allegations are deficient because the class involves businesses and persons who were in contact with Yelp regarding the option to advertise regardless of whether Yelp made an unlawful threat or the class members felt fear or purchased advertising because of Yelp's threat. *See* MTD, 24. Defendant's assessment fails, however, because the subclasses are defined to include class members that were subject to Yelp's manipulations, which, are sufficient to constitute at a minimum *attempted* extortion, regardless of whether the class member felt any fear or felt compelled to purchase advertising. Moreover, if Plaintiffs were to define their class by a class member's feeling of fear (which is unnecessary), it would necessitate the types of individual inquiries that defeat class certification (i.e., each class member would need to be asked if they experienced fear).

Defendants next argue that because the subclasses include businesses that were subject to the manipulation of reviews, that it could include advertisers who benefited from Yelp's review manipulations (and thus did not suffer any harm). Defendant's argument overlooks the fact that per the Sponsor subclass definition, the Plaintiffs whose reviews were manipulated purchased

[14]/ As Defendant's own authority instructs, prior amendment is only one of many factors courts consider when determining whether to deny a party leave to amend. *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996) (identifying five factors).

advertising *after* Yelp's manipulative conduct. Given the allegations, Defendant's assertion that a member of the subclass would have its reviews positively manipulated by Yelp (for no reason) and then would feel compelled to purchase advertising from Yelp would be nonsensical.[15] It makes no sense to reach this illogical conclusion prior to engaging in discovery.

Finally, Defendant argues that Plaintiffs cannot satisfy the typicality requirement because their claims are factually inconsistent. It is well-settled that class certification may be proper "even though varying fact patterns support the claims or defense of individual class members or there is a disparity in damages by the representative parties and other members of the class." *Schlagal v. Learning Tree, Int'l*, No. 98-6384, 1999 WL 672306 at *3 (C.D. Cal. Feb. 23, 1999). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ewert v. eBay, Inc.*, Nos. C-07-0219 RMW C-07-04487 RMW, 2010 WL 4269259 at *3 (N.D. Cal. Oct. 25, 2010).

Plaintiffs allege facts common to each of them (and the class members): that Defendant was in contact with Plaintiffs for advertising, that Defendant manipulated Plaintiffs' reviews in a way that did not comply with its Review Terms, and that the Sponsor Plaintiffs purchased advertising. Plaintiffs need not show that class members relied on the same communications, received the same reviews and ratings, or that they all did (or did not) purchase advertising. *See Ewert*, 2010 WL 4269259 at *3 ("Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.").

---

15/ The cases Defendant relies on are distinguishable. *See, e.g., Stearns v. Select Comfort Retail Corp.*, No. 08-cv-02746, 2009 WL 4723366 at * 15 (N.D. Cal. Dec. 4, 2009) (due to statute of limitations, individualized inquiries necessary to determine when each class member purchased mattress and fact that warranty claims, which require notice, an opportunity to cure, and reliance are often improper for class treatment); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1166-67 (N.D. Cal. 2008) (class defined by those who purchased computer products that Dell falsely advertised necessitates reaching legal determination on whether Dell falsely advertised to determine each member); *Hovesepian v. Apple*, Inc., No. 08-5788, 2009 WL 5069144 *1, *6 (N.D. Cal. Dec. 17, 2009) (class defined as those who purchased an iMac computer not ascertainable because it includes members who didn't have problems with display screen).

"Where, as here, it is not 'plain from the pleadings' that the class should not be certified, discovery and full briefing on class certification is warranted." *Dodd-Owens v. Kyphon, Inc.*, No. C06-3988, 2008 WL 410241 at *3 (N.D. Cal. Feb. 12, 2008) (citing *Myers v. Medquist, Inc.*, No. 05-4608, 2006 WL 3751210 (D.N.J. Dec. 20, 2006) (declining to strike class allegations because discovery had not yet commenced and noting that most courts deny motions to strike if brought prior to discovery)). No discovery has taken place in this case, and given subclass definitions, no individualized inquiries are necessary to "determine the state of mind of each member." Instead, discovery will likely show that Yelp's policies and manipulative conduct (and each class members' subsequent decision to purchase advertising) can easily be identified without making individualized inquiries. *See, e.g., Westways World Travel, Inc. v. AMR Corp.*, No. EDCV 99-386, 2005 WL 6523266 at *8 (C.D. Cal. Feb. 24, 2005) (stating that class certification claim on extortion is "viable if it is susceptible to class-wide proof") (citing *George Lussier Enters., Inc. v. Subaru of New England, Inc.*, 2001 WL 920060 at *17 (D.N.H. Aug. 3, 2001) (offering internal documents showing plan to extort dealers and testimony of former employees regarding plan susceptible to class certification)).

It is necessary to begin discovery before ruling on whether the subclasses in the case can be certified, and for that reason, Defendant's Motion to Dismiss and/or Strike Plaintiffs' class allegations should be denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion to Dismiss Second Amended Complaint and to Dismiss or Strike Class Action Allegations be denied in its entirety.

DATED: January 7, 2011

**ONGARO BURTT & LOUDERBACK LLP**

By: */s/ David R. Ongaro*
David R. Ongaro

Attorneys for Plaintiffs
BORIS Y. LEVITT *et al.*