1  GIBSON, DUNN & CRUTCHER LLP
   GAIL LEES, SBN 90363
2  glees@gibsondunn.com
   333 South Grand Avenue
3  Los Angeles, California 90071-3197
   Telephone: (213) 229-7000
4  Facsimile: (213) 229-7520

5  S. ASHLIE BERINGER, SBN 263977
   SUSANNAH WRIGHT, SBN 264473
6  aberinger@gibsondunn.com
   swright2@gibsondunn.com
7  1881 Page Mill Road
   Palo Alto, California 94304-1211
8  Telephone: (650) 849-5300
   Facsimile: (650) 849-5333
9
   YELP! INC.
10 AARON SCHUR, SBN 229566
   aschur@yelp.com
11 706 Mission Street
   San Francisco, California 94103
12 Telephone: (415) 908-3801
   Facsimile: (415) 908-3833
13
   Attorneys for Defendant
14 YELP! INC.

15              UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17              SAN FRANCISCO DIVISION

| | |
|---|---|
| BORIS Y. LEVITT D/B/A RENAISSANCE RESTORATION, CATS AND DOGS ANIMAL HOSPITAL, INC., TRACY CHAN D/B/A MARINA DENTAL CARE and PROFESSIONAL CONSTRUCTION GROUP, INC. D/B/A PAVER PRO; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YELP! INC.; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. CV 10-01321 MHP<br>Consolidated with CV 10-02351 MHP<br><br><u>CLASS ACTION</u><br><br>**DEFENDANT YELP! INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT AND TO DISMISS OR STRIKE CLASS ACTION ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   February 7, 2011<br>Time:   2:00 p.m.<br>Place:  Courtroom 15, 18th Floor<br>        450 Golden Gate Avenue<br>        San Francisco, California<br>Judge:  The Honorable Marilyn H. Patel |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

II. ARGUMENT ................................................................................................................................ 1

    A. Plaintiffs Have Failed to Plead Facts Sufficient to Establish Article III Standing ................................................................................................................................ 1

        1. Plaintiffs Do Not Allege a Concrete and Particularized Injury .......................... 2

        2. Plaintiffs Fail to Point To a Non-Speculative Causal Connection .................... 3

        3. Plaintiffs Fail to Allege a Redressable Injury ....................................................... 4

    B. Plaintiffs Lack Standing Under the UCL ................................................................... 7

    C. Plaintiffs Fail to State a Claim under the UCL .......................................................... 8

        1. Plaintiffs Have Not Alleged "Unlawful" Conduct .............................................. 8

            a. Plaintiffs Fail to Allege that Yelp Threatened Unlawful Injury ................................................................................................................ 9

            b. Fear Was Not the Controlling Cause of Plaintiffs' Decision to Advertise .................................................................................. 11

            c. Plaintiffs Have Not Alleged That Purported Fear Was Reasonable ................................................................................................. 11

        2. Plaintiffs Have Not Alleged Unfair Conduct .................................................... 12

    D. Plaintiffs Cannot Plead Legally Sufficient Class Allegations .................................. 13

III. CONCLUSION ........................................................................................................................ 15

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ............................................................................................................ 5

*Carafano* v. *Metrosplash.com, Inc.,*
    339 F.3d 1119 (9th Cir. 2003) ............................................................................................ 5, 6

*Cel-Tech Commc'ns v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) .................................................................................................. 12, 13

*City and County of San Francisco v. Tutor Saliba Corp.,*
    No. C 02-5286 CW, 2005 WL 645389 (N.D. Cal. March 17, 2005) ..................................... 12

*City of Alameda v. FG Managing Member, Inc.,*
    No. C 04-04010 WHA, 2004 WL 2403848 (N.D. Cal. Oct. 26, 2004) ................................... 2

*Clayworth v. Pfizer,*
    49 Cal. 4th 758 (2010) .......................................................................................................... 8

*Ewert v. eBay, Inc.,*
    Nos. C-07-0219 RMW C-07-04487 RMW, 2010 WL 4269259
    (N.D. Cal. Oct. 25, 2010) .................................................................................................... 15

*F.T.C. v. Accusearch Inc.,*
    570 F.3d 1187 (10th Cir. 2009) ............................................................................................ 7

*Fair Hous. Council v. Roommates.com, LLC,*
    521 F.3d 1157 (9th Cir. 2008) .............................................................................................. 7

*Focus on the Family v. Pinellas Suncoast Transit Auth.,*
    344 F.3d 1263 (11th Cir. 2003) ............................................................................................ 4

*Gentry v. eBay, Inc.,*
    99 Cal.App.4th 816 (2002) ................................................................................................ 5, 6

*George Lussier Enters., Inc. v. Subaru of New England, Inc.,*
    2001 WL 920060 (D.N.H. Aug. 3, 2001) ............................................................................ 15

*Goddard v. Google, Inc.,*
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) ................................................................................ 6

*Hall v. Time, Inc.,*
    158 Cal. App.4th 847 (2008) ................................................................................................ 8

*Humphries v. Los Angeles County,*
    No. SACV 03-697 JVS, 2005 WL 6431760 (C.D. Cal. Aug. 22, 2005), *rev'd on
    other grounds,* 131 S. Ct. 447 (2010) ................................................................................... 2

*Hy Cite Corp. v. Badbusinessbureau.com, LLC,*
    418 F. Supp. 2d 1142 (D. Ariz. 2005) ................................................................................... 7

# TABLE OF AUTHORITIES
### [Continued]

Page(s)

*Khoury v. Maly's of California*,
    14 Cal. App.4th 612 (1993) .................................................................................................. 8

*Leong v. Square Enix of Am. Holdings, Inc.*,
    2010 WL 1641364 (C.D. Cal. April 20, 2010) .................................................................... 13

*Mazur v. eBay, Inc.*,
    No. C 07-03967, 2008 WL 618988 (N.D. Cal. Mar. 4, 2008) .......................................... 6, 9

*Meese v. Keene*,
    481 U.S. 465 (1987) ............................................................................................................. 2

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ............................................................................................... 5

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
    151 Cal. App 4th 688 (2007) ............................................................................................ 3, 4

*Parrish v. Nat'l Football League Players Ass'n*,
    534 F. Supp. 2d 1081 (N.D. Cal. 2007) ............................................................................. 12

*People v. Oppenheimer*,
    209 Cal. App.2d 413 (1963) ............................................................................................... 11

*Presbyterian Church v. United States*,
    870 F.2d 518 (1989) ......................................................................................................... 2, 3

*Rubio v. Capital One Bank*,
    613 F.3d 1195 (9th Cir. 2010) ............................................................................................. 4

*Schlagal v. Learning Tree, Int'l*,
    No 98-6384, 1999 WL 672306 (C.D. Cal. Feb. 23, 1999) ................................................ 15

*Swift v. Zynga Game Network, Inc., et al.*,
    No. C 09-05443 SBA, 2010 WL 4569889 (N.D. Cal. Nov. 3, 2010) .................................. 7

*United States v. Granados*,
    142 F.3d 1016 (7th Cir. 1998) ...................................................................................... 11, 12

*United States v. Lisinski*,
    728 F.2d 887 (7th Cir. 1984) ............................................................................................. 11

*United States v. Marsh*,
    26 F.3d 1496 (9th Cir. 1994) ............................................................................................. 12

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ............................................................................................. 13

*United States v. Rivera Rangel*,
    396 F.3d 476 (1st Cir. 2005) ............................................................................................. 11

*Westways World Travel, Inc. v. AMR Corp.*,
    2005 WL 6523266 (C.D. Cal. Feb. 24, 2005) .............................................................. 14, 15

# TABLE OF AUTHORITIES
### [Continued]

Page(s)

*Wright v. General Mills, Inc.*,
   2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) .................................................................... 8

**STATUTES**

47 U.S.C. § 230 ................................................................................................................................ 1

**RULES**

Fed. R. Civ. P. 12(b)(6)................................................................................................................... 13
Fed. R. Civ. P. 12(f) ....................................................................................................................... 13
Fed. R. Civ. P. 23 ........................................................................................................................... 13

I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' opposition confirms this case is nothing more than an improper attempt to stifle consumer opinions about Plaintiffs' businesses and defeat the broad immunity afforded to online services like Yelp's that provide a forum for protected consumer speech. Although Plaintiffs now recast their frustration about consumer reviews on Yelp as "extortion," their opposition papers cannot point to a single allegation that Yelp threatened to harm Plaintiffs if they did not advertise.

Instead, Plaintiffs concede that their sole "extortion" claim under the Unfair Competition Law ("UCL") rests on a theory that threats of unlawful injury somehow were "implied" because Yelp published and "maintained" negative consumer reviews, and screened positive reviews, about Plaintiffs' businesses. Despite Plaintiffs' misguided efforts to portray these editorial functions as "manipulation," it is well-settled that Plaintiffs' claims—based entirely on Yelp's activities in publishing and screening third-party consumer reviews—are barred by Section 230 of the Communications Decency Act ("CDA 230").

In a belated attempt to overcome CDA immunity, Plaintiffs argue for the first time that Yelp is a "content provider" but fail to provide any factual or legal support for this claim. Courts have flatly rejected Plaintiffs' argument that Yelp's publication of aggregated user "star ratings" transforms it into an "information content provider," holding instead that publication of a rating system derived from third-party content falls squarely within the scope of CDA immunity. Nor do Plaintiffs allege any factual basis for their empty argument that Yelp "manufactured" reviews.

Ultimately, Plaintiffs cannot support their speculative claims of extortion and are left to rely instead upon unwarranted inferences about publishing activities for which Yelp is immune. Plaintiffs have had five chances to plead a viable claim—or plausible basis for class-wide adjudication—but have failed to do so. The Second Amended Complaint ("SAC") should be dismissed with prejudice.

II.     ARGUMENT

A.      **Plaintiffs Have Failed to Plead Facts Sufficient to Establish Article III Standing**

Yelp's moving papers demonstrated that Plaintiffs lack Article III standing because they have not pleaded specific, non-speculative facts showing the invasion of a concrete and particularized interest caused by Yelp's alleged "extortion." See Yelp's Mot. to Dismiss SAC ("MTD") at 11-16.

Gibson, Dunn & Crutcher LLP

1

YELP'S REPLY IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE         CV 10-01321 MHP; CV 10-02351 MHP

### 1. Plaintiffs Do Not Allege a Concrete and Particularized Injury

Plaintiffs do not (and cannot) allege facts that plausibly support their generic claims of reputational injury and lost business, nor do they point to any such allegations in their opposition papers. MTD at 12-13. Instead, Plaintiffs now suggest, incorrectly, that a conclusory allegation of harm to reputation, without more, is sufficient to demonstrate Article III standing. *See* Pl.'s Opp'n Br. ("Opp.") at 6. The cases Plaintiffs cite hold no such thing and instead establish merely that specific allegations detailing concrete harm to a party's reputation can, in certain contexts, demonstrate an injury-in-fact. *Meese v. Keene*, 481 U.S. 465, 473-77 (1987) (injury sufficient for standing where based on facts in detailed affidavits demonstrating harm to reputation); *Humphries v. Los Angeles County*, No. SACV 03-697 JVS, 2005 WL 6431760, at *5-7 (C.D. Cal. Aug. 22, 2005), *rev'd on other grounds*, 131 S. Ct. 447 (2010) (Article III standing established by detailed declarations specifically outlining harm from inclusion in government's Child Abuse Central Index).[1]

In stark contrast to the detailed allegations in *Meese* and *Humphries*, Plaintiffs have amended their fifth pleading with the conclusory claim that Plaintiffs' "business reputation was injured," with no supporting facts demonstrating the nature or scope of any such "injury." SAC ¶¶ 54, 73, 92, 105. Such a bare claim cannot magically create standing in the absence of specific allegations showing a concrete and actual injury. *See* MTD at 12-13 (citing cases); *see also City of Alameda v. FG Managing Member, Inc.*, No. C 04-04010 WHA, 2004 WL 2403848, at *4 (N.D. Cal. Oct. 26, 2004) (no standing where "bare, conclusory" claims of injury relied on "speculation").

Likewise, Plaintiffs cannot overcome the mass of authority holding that generic allegations of "lost business" cannot alone support Article III standing. *See* MTD at 13 (citing cases). In their response, Plaintiffs concede that they cannot quantify their purported "loss of sales, revenues and/or assets" by identifying a single customer or sale lost due to Yelp's alleged conduct. Opp. at 7. Instead, Plaintiffs argue that such vague and conclusory allegations are somehow sufficient, citing two wholly inapplicable cases. *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th

---

[1] Although Plaintiffs also cite *Presbyterian Church v. United States*, 870 F.2d 518, 522-23 (1989) (Opp. at 6-7), that case did not involve allegations of reputational harm, and instead, applied *Meese* in finding that specific, demonstrable allegations of harm were sufficient to establish standing.

688, 698 (2007), a state court decision that did not address Article III standing, involved precise allegations quantifying Overstock's diminution in asset value and decline in market capitalization, underscoring the comparative deficiency of Plaintiffs' speculative claims of "lost business" here. Likewise, *Presbyterian Church*, 870 F.2d at 521-22, did not address claims of lost business, and instead involved detailed allegations (unlike the vague ones asserted here) that plaintiffs suffered a "concrete, demonstrable decrease in attendance" due to government interference with their ministries.

### 2. Plaintiffs Fail to Point To a Non-Speculative Causal Connection

Plaintiffs also fail to allege (and their opposition does not identify) any specific or plausible nexus between their purported "injuries" and Yelp's alleged unlawful conduct. *See* MTD at 14-16.

Indeed, Plaintiffs cannot cite any factual allegations supporting a claim that the publication or removal of a handful of reviews by Yelp *caused* the speculative "decline" in revenues and customers alleged here. For example, Plaintiffs claim that the "star rating" for Plaintiff Chan's business "dropped from 5 stars to 3 stars," allegedly due to the removal of nine 5-star reviews from her business page. Opp. at 8-9; SAC ¶ 76. Yet Plaintiffs make no attempt to explain how the *removal* of nine reviews on Yelp caused a "decline" in Chan's customers or revenues—or could have harmed Chan's reputation—especially when her allegations ignore countless *other* reviews posted by consumers on Yelp that contributed directly to the "3 star" rating she suggests is responsible for "lost business" (and that are not encompassed by Plaintiffs' "extortion" claim). SAC ¶ 76 (conceding that more than "30 reviews" from users contributed to Chan's "overall star rating," including over 20 that were not allegedly removed); *see also* SAC ¶¶ 47, 48, 51 (showing no connection between Levitt's allegations that he experienced a "decrease in page views," customers and harm to his business's reputation and the removal of some positive reviews). Thus, even if Plaintiffs had demonstrated a plausible link between their speculative claims of "lost business" and the content of user reviews on Yelp (which they have not), they have utterly failed to show a connection between their claim that Yelp engaged in "extortion" and their speculative claims of injury.

Conspicuously, Plaintiffs do not cite a single case finding such conclusory claims of causation sufficient to support Article III standing. Instead, Plaintiffs cite to a single Eleventh Circuit case finding a direct causal nexus between the plaintiff's expenditure of out-of-pocket advertising costs

and defendants' conduct, based on specific, "direct evidence" that the defendants' instructions caused plaintiff's advertising display to be banned—concrete evidence of causation that does not exist here. *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273-74 (11th Cir. 2003).[2]

Plaintiffs fail to establish that the Sponsor Plaintiffs have standing under Article III because they do not connect their purported "lost money in advertising costs" to any extortionate threat. MTD at 13 n.6, 15-16. As discussed below, Sponsor Plaintiffs' conclusory allegations that they paid advertising fees "to avoid Yelp's manipulation" of reviews cannot establish causation in the absence of any allegation that Yelp threatened to manipulate reviews improperly absent the payment of those fees. *See infra* pp. 8-12. For this reason, Plaintiffs' reliance on *Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir. 2010) is misplaced because, unlike here, the plaintiff in *Rubio* established that the defendant's wrongful conduct directly caused the plaintiff's harm. *See id*. at 1203-04 (defendant's wrongful misrepresentation concerning plaintiff's APR caused plaintiff to suffer a monetary loss).

Ultimately, Plaintiffs cannot overcome their repeated admissions that any harm they experienced resulted at most from the content of third-party consumer reviews and Yelp's protected editorial functions in publishing and screening those reviews—and not any extortionate conduct by Yelp. *See, e.g.*, SAC ¶ 92 ("In addition, *due to the posting of negative reviews and/or removal of positive reviews*, Chan's business's reputation was injured."). As Yelp demonstrated in its moving papers, and as addressed below, the law is clear that Yelp is immune from claims arising from these editorial functions under CDA 230. *See* MTD at 15-16.

### 3. Plaintiffs Fail to Allege a Redressable Injury

Yelp has shown that Plaintiffs' UCL claim, premised upon alleged "extortion," cannot be redressed by a favorable decision because it arises entirely from third-party consumer reviews and rankings—and from Yelp's exercise of editorial discretion in publishing (or refraining to publish) those reviews—for which Yelp is squarely immune under CDA 230. *See* MTD at 15-16.

In an attempt to avoid the broad immunity afforded to an interactive computer service like Yelp, Plaintiffs' opposition asserts, without support, that Yelp has somehow supplied the "content"

---

[2] Although Plaintiffs again cite to *Overstock.com*, that case did not involve any analysis of the causation requirement for Article III standing. 151 Cal. App 4th at 716.

that gives rise to Plaintiffs' claims. Opp. at 10-13. This argument rests on a fundamental misstatement of Plaintiffs' allegations and applicable law.

First, although Plaintiffs contend that they have alleged that Yelp *itself* generated or "directed" the content of negative reviews, they conspicuously fail to point to a single fact that supports this claim. Opp. at 2, 11. Instead, Plaintiffs claim "upon information and belief" that unspecified negative reviews—not linked to the Plaintiffs—are "sometimes generated by Yelp personnel" or by unspecified "others" who supposedly "act on behalf of Yelp or at Yelp's direction." *Id.*; SAC ¶¶ 34, 40. Such vague and unsupported allegations plainly do not create a plausible inference that Yelp created the content of user reviews—much less that it wrote the content of any of the specific user reviews about the named Plaintiffs that give rise to their claims asserted here.[3] *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (CDA 230 immunity applies unless defendant "created or developed the particular information at issue"); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("naked assertion[s]" devoid of "further factual enhancement" are insufficient to state a claim); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 258-60 (4th Cir. 2009) (bare allegations that review website "fabricated" third-party reviews at issue were "devoid of further factual enhancement" and insufficient to overcome CDA 230 immunity).

Second, Plaintiffs' suggestion that a business's "star rating" is "content" supplied by Yelp has been flatly rejected. As Plaintiffs concede, a business's star rating is an average of individual ratings assigned by users on Yelp, and Yelp's role in averaging and publishing users' ratings plainly does not transform it into an information content provider. Opp. at 1-2; SAC ¶ 2. Indeed, *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816 (2002)—which the Ninth Circuit expressly adopted in *Carafano*—rejected precisely this argument. In *Gentry*, the plaintiff claimed that eBay was a "content provider" because it averaged users' "Positive Feedback," "Negative Feedback," and "Neutral Feedback" responses and used them to provide sellers a color coded star symbol "indicat[ing] the amount of Positive Feedback

---

[3] Although Plaintiffs argue that Yelp "manufactured" unspecified negative reviews concerning Plaintiff Cats and Dogs, the cited allegation does not identify a single review that Yelp actually wrote or supply any factual support for such a claim. *See* Opp. at 4, 12; SAC ¶ 71; *see infra* pp. 9-11. In fact, Cats and Dogs repeatedly concedes that its claims arise from user reviews "posted" by Yelp that were written by third parties "Chris R." and "Kay K.," who are not alleged to be employees or agents of Yelp. SAC ¶¶ 65-66, 71.

received." *Gentry*, 99 Cal. App. 4th at 833-34.  The *Gentry* court held that such actions did not transform eBay into an information content provider because eBay, like Yelp, did not create the underlying responses from which such ratings and information were derived. *Id.*  Yelp's role is precisely the same here.

Finally, Plaintiffs cannot defeat the broad immunity afforded to online publishers under CDA 230—which was enacted precisely to prohibit claims that have a chilling effect on online speech, like those asserted here—by characterizing Yelp's editorial functions as "manipulation."  As Plaintiffs' opposition confirms, Plaintiffs' claims boil down to two core contentions: a) Yelp "posted" or "published" negative reviews written by users; and b) Yelp "removed" positive reviews written by users.  Opp. at 2, 17.  CDA 230 squarely protects each of these activities.

It is well-settled that an online publisher like Yelp is immune from publishing the content of reviews (negative or positive) written by third parties, *including any reviews that may arguably violate its Terms of Service*.[4]  *See* MTD at 15-16 (citing cases).  Likewise, as this Court has held, Yelp's activities in screening reviews from publication (whether positive or negative) does not transform Yelp into a content provider, and thus cannot defeat immunity.  *Mazur v. eBay, Inc.*, No. C 07-03967, 2008 WL 618988, at *9 (N.D. Cal. Mar. 4, 2008) (Patel, J.) (defendant immune under CDA 230 for screening decisions because "screening . . . is akin to deciding whether to publish"); *Carafano*, 339 F.3d at 1124 ("full immunity" under CDA 230 for third-party content "regardless of [defendant's] specific editing or selection process").

Plaintiffs do not cite any case holding otherwise.  Instead, each of the cases cited by Plaintiffs involve claims that the defendants developed and wrote the specific, underlying content that gave rise to the plaintiffs' claims—circumstances not alleged here.  Opp. at 10-11; *see, e.g.*, *Swift v. Zynga*

---

[4] Plaintiffs' incorrect suggestion that Yelp failed to comply with Yelp's Terms of Service does not alter the analysis under CDA 230, particularly since Yelp never promised to enforce its Terms of Service in every instance.  *See Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1200–01 (N.D. Cal. 2009) (where no promise by defendant to "enforce its Content Policy," violation of such a policy cannot be a basis for liability); *see also* Yelp's Terms of Service, Ex. 1 to Beringer Supp. Decl. ("We are under no obligation to enforce the Terms of Service on your behalf against another user.  While we encourage you to let us know if you believe another user has violated the Terms of Service, we reserve the right to investigate and take appropriate action *at our sole discretion*.") (emphasis added).

*Game Network, Inc.*, No. C 09-05443 SBA, 2010 WL 4569889, at *4-5 (N.D. Cal. Nov. 3, 2010) (plaintiff alleged that Zynga created and developed specific content within the allegedly deceptive 'special offers' at issue); *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) (defendant website deemed an information content provider solely with respect to pre-scripted, discriminatory "answers" defendant provided in a pulldown menu that it wrote); *Hy Cite Corp. v. Badbusinessbureau.com, LLC*, 418 F. Supp. 2d 1142 (D. Ariz. 2005) (defendant drafted objectionable editorial comments and titles); *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009) (defendant developed the specific content upon which the FTC's claims were based).

### B.   Plaintiffs Lack Standing Under the UCL

Yelp's moving papers established that Plaintiffs' vague allegations of injury also do not demonstrate an injury-in-fact sufficient for standing under the UCL and that Non-Sponsor Plaintiffs do not allege "lost money or property as a result" of Yelp's alleged conduct. *See* MTD at 16-17.

Plaintiffs provide no support for their assertion that vague allegations of "lost business" and "reputational injury" alone constitute the "concrete and particularized" injury required to establish standing under the UCL. Opp. at 13-14. This failure to allege a non-speculative, concrete injury stemming from Yelp's alleged "extortion" alone requires dismissal of their claims. *See supra* pp. 1-6; MTD at 12-17.

Instead, Plaintiffs focus entirely on claims that the Sponsor Plaintiffs were "injured" by paying advertising fees because they purportedly "***felt*** forced to make" these payments "to avoid Yelp's manipulations." Opp. at 14. Conspicuously absent from their pleading, however, is any allegation that Yelp threatened that it would "manipulate" reviews unless Sponsor Plaintiffs purchased advertising, as would be required to show such an "injury." *See infra* pp. 8-12.

Plaintiffs also mischaracterize the requirements for establishing standing under the UCL, arguing that the Non-Sponsor Plaintiffs are not required to demonstrate an "outlay of funds" to show standing since they seek only injunctive relief. Opp. at 14-15. But as Yelp has demonstrated, Non-Sponsor Plaintiffs—who admittedly never purchased advertising from Yelp—cannot satisfy the "lost

money or property" requirements for UCL standing. *See* MTD at 17.[5] Non-Sponsor Plaintiffs cannot dodge this requirement merely by limiting their claims to injunctive relief. Indeed, the California Supreme Court in *Clayworth v. Pfizer* specifically held that a party must demonstrate standing under Section 17204 before "it may seek injunctive relief." 49 Cal. 4th 758, 789 (2010). Standing under the UCL is limited to "those who *had* had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practice." *Id.* at 788 (citing *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 854-55 (2008) (injury-in-fact requirement satisfied where plaintiff has "expended money due to the defendant's acts of unfair competition"; "lost money or property" in which there was an ownership interest; or "has been denied money to which plaintiff has a cognizable claim")) (emphasis added). Because Non-Sponsor Plaintiffs concede that they did not purchase advertising—and do not allege that they lost money or property as a result of any business dealings with Yelp—they cannot demonstrate standing under the UCL. It is well-settled that vague allegations of lost business and reputational harm do not establish the loss of money or property required for UCL standing, and Plaintiffs cite no case that holds otherwise. MTD at 12-13.

### C. Plaintiffs Fail to State a Claim under the UCL

Even if Plaintiffs could demonstrate standing (and they cannot), they have failed to plead a legally sufficient basis to pursue their sole UCL claim, now explicitly limited to a vague claim of "extortion." *See* MTD at 17-23. Plaintiffs' opposition only confirms that they have failed to plead the most basic elements of extortion, as required to avoid dismissal.

#### 1. Plaintiffs Have Not Alleged "Unlawful" Conduct

Despite Plaintiffs' assertion otherwise, Plaintiffs *must* plead "with reasonable particularity" plausible facts supporting each of the statutory elements of the violations that give rise to their "unlawful" UCL claim. *See* Opp. at 16-17; *Wright v. Gen. Mills, Inc.*, No. 08-1532 (NLS), 2009 WL 3247148, at *6 (S.D. Cal. Sept. 30, 2009) (citing *Khoury v. Maly's of Cal.*, 14 Cal. App. 4th 612, 619 (1993)). As Yelp's moving papers demonstrate, Plaintiffs utterly fail to do so here. MTD at 17-22.

---

[5] Likewise, Plaintiffs' argument that "[i]njunctive relief . . . does not require that the party also be entitled to restitution" is a red herring. Opp. p. 14. The law is clear that *even* a party seeking *only* injunctive relief under the UCL must first satisfy the requirement of standing, which indisputably requires a showing of lost money or property. *See Clayworth*, 49 Cal. 4th at 799.

### a. Plaintiffs Fail to Allege that Yelp Threatened Unlawful Injury

Plaintiffs admit that the SAC contains no allegation of any express threat made by Yelp, an essential element of extortion or attempted extortion. Opp. at 17-18. Instead, Plaintiffs rely on four categories of allegations they contend somehow constitute *implied* threats. *Id*. None of these allegations supports a claim of extortion.

First, Plaintiffs argue that the removal of positive reviews or publication of negative reviews constitutes "a threat" to cause Plaintiffs fear that "more reviews would be removed" or that "negative reviews would remain" unless they purchased advertising. Opp. at 17. But even if these allegations were true and were accompanied by factual support (which they are not), Plaintiffs cannot pursue claims of "extortion" predicated on a theory that Yelp's editorial activities (for which Yelp is immune under CDA 230) somehow constitute a "threat" because such claims impermissibly seek to hold Yelp liable under the UCL for its role in publishing and editing third-party content, and therefore do not allege—as they must—any threat of *unlawful* injury. *See supra* pp. 4-7; *Mazur*, 2008 WL 618988, at *9 ("lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish . . . — are barred"). As Plaintiffs concede, a threat to engage in a lawful practice—even one that causes injury or results in fear—cannot constitute a "*wrongful* use of fear" that gives rise to extortion or attempted extortion. *See* MTD at 19-20 (citing cases); *see* Opp. at 18.

Moreover—and although these allegations cannot give rise to liability as a matter of law—there also is no hint in the SAC that Yelp ever stated or *implied* that it would remove "more" positive reviews or publish "more" negative reviews unless the Plaintiffs advertised. To the contrary, Plaintiffs concede that Yelp representatives specifically advised that they *could not* reinstate screened reviews or override the operation of Yelp's automated review filter. FAC ¶¶ 43, 45; SAC ¶ 44. Nor does the Complaint support a plausible inference that particular reviews were removed, maintained or reinstated as a "threat" to induce businesses to advertise—rather than through the normal operation of Yelp's automated review filter—given Plaintiffs' repeated admissions that positive reviews were removed and negative reviews posted whether or not they advertised with Yelp, and long before Plaintiffs ever received offers of advertising. *See, e.g.*, SAC ¶¶ 43, 57, 61, 95, 97.

Second, Plaintiffs point to a single, conclusory allegation added to the SAC that Yelp "manufactured its own reviews as a threat." Opp. at 17 (citing SAC ¶ 71). This allegation consists solely of the naked phrase "and/or manufactured its own reviews," which Plaintiffs added to the SAC, after conspicuously failing to do so in three prior versions of their pleading. SAC ¶ 71. As discussed in Section A3, the inclusion of a naked, conclusory allegation on "information and belief" cannot create a plausible inference that Yelp "manufactured" reviews. *See supra* pp. 4-7.

Finally, in the admitted absence of any express threat of injury, Plaintiffs rely on three vague statements—each allegedly made to Sponsor Plaintiff Chan—that they contend "implied" threats of unlawful injury. Opp. at 17 (citing SAC ¶¶ 78, 81, 89). But none of these alleged statements even hint that Yelp would harm Chan unless she paid for advertising. Indeed, two of the allegations assert that a Yelp representative advised that Yelp "had the ability to remove reviews from a business page" and that Yelp "tweek[s] ratings every so often" which, at most, suggest a vague hint that Yelp could *assist* Chan if she advertised. SAC ¶¶ 78, 81. Indeed, Chan concedes that these alleged statements were accompanied by an alleged "offer [of] *lots of benefits*" and to "*help* [Chan] if she signed up for advertising." SAC ¶¶ 77, 81 (emphasis supplied). Such vague purported offers to help Chan if she purchased advertising in no way establish that Yelp threatened to *harm her* if she did not—and thus cannot support a claim of extortion as a matter of law.[6] *See* MTD at 18-20 (citing cases).

At bottom, Plaintiffs' arguments invert the requirements of extortion by insisting that vague offers to provide advertising benefits to, and improve the ratings of, a single business (allegations Yelp adamantly denies) are tantamount to a "threat" to cause harm if that business refused to advertise. Courts consistently have rejected attempts to portray an offer of benefits—which is not actionable—as a threat of unlawful injury, which is required to demonstrate extortion. *See* MTD at 20 (citing cases). And Plaintiffs do not cite a single case where a court found that such vague offers of assistance established a threat of unlawful injury sufficient to plead extortion.

Instead, Plaintiffs rely on three cases—including two outside the Ninth Circuit—that involved

---

[6] The other alleged statement (that "Yelp manually adds and removes reviews based on its own discretion") purportedly was made at least 18 months *after* Chan *cancelled* her advertising contract and did not involve any attempt to sell Chan advertising, much less any suggestion that Yelp would harm Chan unless she advertised—and therefore cannot constitute a threat. Opp. at 17; SAC ¶¶ 89.

implied, but blatant, threats of harm and thus are wholly inapplicable here. Opp. at 17-18 (citing *United States v. Lisinski*, 728 F.2d 887 (7th Cir. 1984) (government employee demanded money to prevent threatened loss of victim's liquor license);[7] *United States v. Rivera Rangel*, 396 F.3d 476 (1st Cir. 2005) (government employee repeatedly demanded money in exchange for continued approval of necessary permits); *People v. Oppenheimer*, 209 Cal. App. 2d 413, 418 (1962) (menacing letters stating "It will cost you more not to pay" and "Are all windows insured?" constituted a threat).

### b.   Fear Was Not the Controlling Cause of Plaintiffs' Decision to Advertise

Plaintiffs present no authority suggesting that their generic, conclusory allegations are sufficient to allege that "fear" was the "controlling cause" of any Plaintiff's decision to purchase Yelp advertising. Opp. at 19-20. Chan does not explain her previous, inconsistent admission that she purchased advertising due to "a decline in new patients" and in her business's rating, not due to any wrongful threat or fear. FAC ¶ 74. Chan's belated inclusion of a vague assertion that she also purchased advertising due to a "fear of further manipulations" does not establish that such fear was the "controlling cause"—particularly in absence of any allegation that Yelp implied it would cause her harm unless she purchased advertising. SAC ¶ 83; *see supra* pp. 8-11. And Paver Pro admits that it purchased advertising "so that . . . positive reviews . . . would be reinstated" and not out of fear of unlawful injury, which alone requires dismissal of its claim. SAC ¶ 99; *see* MTD at 21.

### c.   Plaintiffs Have Not Alleged That Purported Fear Was Reasonable

Yelp also demonstrated that Plaintiffs' UCL claim is deficient because they allege no facts supporting a plausible inference that any "fear" they purportedly experienced was reasonable. MTD at 21-22. Plaintiffs fail to identify a single, supported allegation and, instead, erroneously assert that vague statements that Plaintiffs suffered "personal (reputational) harm, economic harm, and lost customers" somehow are sufficient. Opp. at 20. The one case Plaintiffs cite for this proposition only underscores the deficiency of these allegations. In *United States v. Granados*, 142 F.3d 1016 (7th Cir. 1998), the Seventh Circuit found a plaintiff's fear of harm reasonable where the defendant **wrote** and published numerous derogatory articles about the victim and her organization, with the stated

---

[7] Plaintiffs conspicuously and repeatedly omitted the Circuit Court from case citations where, as here, they cite to Circuits other than the Ninth Circuit. Opp. at 17; *see also* Opp. 9-10, 20.

intent to "destroy" the victim, and threatened to keep writing such articles unless the victim paid him $26,000.  *Id*. at 1018.  In stark contrast, Plaintiffs cannot point to any evidence that Yelp ever wrote negative reviews about Plaintiffs or expressed any intent to cause them harm if they did not pay for advertising.[8]  Moreover, Plaintiffs fail to assert any facts plausibly showing that Yelp intended to instill fear, an element that Plaintiffs concede is necessary for any claim of attempted extortion.  Opp. at 20 n.13; *see also United States v. Marsh*, 26 F.3d 1496, 1500-01 (9th Cir. 1994).

Because Plaintiffs failed to plead the requisite elements of a claim for extortion or attempted extortion—after numerous opportunities to do so—their UCL claim must be dismissed with prejudice.

### 2. Plaintiffs Have Not Alleged Unfair Conduct

Yelp's moving papers also established that Plaintiffs failed to allege that Yelp engaged in any "unfair" conduct that could give rise to liability under the UCL.  MTD at 22-23.  In response, Plaintiffs cannot point to a single case that supports their claim that Yelp's alleged conduct was "unfair" within the meaning of the UCL or otherwise, or identify any independent basis for a finding of "unfairness" beyond their deficient allegations of extortion.  Opp. at 21-22.

Plaintiffs do not allege the necessary facts to demonstrate unfairness under *Cel-Tech Communications v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999), or any other cognizable test. Plaintiffs make no attempt to point to an "established public policy" or an "incipient violation of an antitrust law."  Nor do Plaintiffs allege any "harm to competition" within the meaning of *Cel-Tech* or subsequent cases that have applied that test because Plaintiffs have failed to show harm to a *direct competitor* in the online review site market.  Opp. at 22.  *See Cel-Tech*, 20 Cal. 4th at 187-88 n.12 (specifically limiting the "harm to competition" test to actions by a direct competitor alleging anticompetitive practices); *see also Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1092-93 (N.D. Cal. 2007) (dismissing "unfair" UCL claim where plaintiffs did not show harm to competition in defendant's "market for licensing retired players' images").

More fundamentally, *Cel-Tech* holds:  "When specific legislation provides a 'safe harbor,'

---

[8] *City and County of San Francisco v. Tutor Saliba Corp.*, No. C 02-5286 CW, 2005 WL 645389 (N.D. Cal. Mar. 17, 2005), is similarly inapplicable here because the court expressly found that the plaintiffs *did not* sufficiently allege extortion, despite claims that the defendants' "leverage" enabled them to cause "significant economic consequences" to the plaintiffs."  *Id.* at *4-5.

plaintiffs may not use the general unfair competition law to assault that harbor." 20 Cal. 4th at 182. *Cel-Tech*'s holding is fatal to Plaintiffs' claim that Yelp's purported "manipulation" of reviews was "unfair" since, as demonstrated above, CDA 230 squarely immunizes Yelp from claims relating to its publication and removal of user reviews under CDA 230. *See supra* pp. 4-7.[9]

### D.  Plaintiffs Cannot Plead Legally Sufficient Class Allegations

Finally, Yelp demonstrated that that Plaintiffs' proposed class allegations cannot survive the pleading stage at the outset under Federal Rule of Civil Procedure 12(b)(6), 12(f), or 23 because it is readily apparent from the face of their pleading that the proposed class is not ascertainable or maintainable given the fact-intensive claims asserted by Plaintiffs here. MTD at 22-25.

Plaintiffs' opposition glosses over the fundamental obstacles to ascertaining the proposed class by speculating that class members would be "readily identifiable from [Yelp's] electronic records." Opp. at 23. Plaintiffs' suggestion that it would be possible to "simply" determine "which reviews Yelp manipulated in a manner that did not comply with the Review Terms" from unspecified "electronic data" defies credulity, and Plaintiffs do not attempt to explain what "electronic data" could possibly establish whether or not particular reviews (or Yelp's screening or publication of specific reviews) complied with Yelp's Review Terms. *Id.* In fact, to make this determination it would be necessary to ascertain for ***each of millions of individual reviews***: 1) who wrote the review, 2) the motives for writing the review, 3) whether or not the reviewer was improperly affiliated with or received incentives from the business owner, 4) whether or not the reviewer had patronized the business, 5) whether or not the review contained threats, harassment, lewdness, hate speech, or other displays of bigotry; 6) whether or not the review reflected the reviewer's personal experience; or any one of the many other criteria in Yelp's Review Terms. *See* Beringer Supp. Decl., Exs. 1 and 2.[10]

---

[9]  *Leong v. Square Enix of Am. Holdings, Inc.*, 2010 WL 1641364 (C.D. Cal. Apr. 20, 2010), involved *dismissal* of plaintiffs' "unfair" claims because defendants disclosed the complained of forfeiture clause in a user manual. Likewise, here the SAC repeatedly concedes that Yelp fully disclosed its use of a review filter (that screens both positive and negative reviews) and discretion to remove or reinstate reviews, precluding any finding of unfairness. *See* SAC ¶¶ 5, 6.

[10]  The Court may consider the complete contents of Yelp's Terms of Service and Content Guidelines, which are referenced and relied upon in the SAC. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

1   This inquiry alone would require years of litigation and underscores the reasons Plaintiffs' class
2   allegations should be dismissed at the outset.  *See* MTD at 22-25.

3   Likewise, Plaintiffs have identified no "electronic records" that would reveal whether Yelp
4   threatened unlawful injury to specific class members or whether the "controlling cause" of any class
5   members' decision to purchase advertising was reasonable fear—additional factors that define the
6   proposed classes here.  Plaintiffs concede that any class definition implicating the state of mind of
7   particular class members (such as "feelings of fear") precludes class certification.  Opp. at 23.  But
8   UCL claims based entirely on alleged "extortion"—like those here—expressly require a showing that
9   fear was the "controlling cause" of any decision to purchase advertising.  Opp. at 17-20.  Plaintiffs
10  cannot cure this defect by belatedly contending that they are only pursuing claims of attempted
11  extortion—despite their clear allegations to the contrary in their pleading.  SAC ¶¶ 121, 125.

12  Plaintiffs also fail to make any credible showing that the individual Plaintiffs' claims satisfy
13  the typicality requirement.  *See* MTD at 24-25.  Plaintiffs instead point to a handful of superficial
14  "facts" they assert are "common" to all class members—such as the fact that Yelp "was in contact
15  with Plaintiffs for advertising" and that the "Sponsor Plaintiffs purchased advertising."  Opp. at 24.
16  Even these basic facts are not common for members of the same proposed subclass.  For example,
17  Yelp was not in contact with Plaintiff Paver Pro for advertising; Paver Pro concedes it purchased
18  advertising from Yelp's website without ever speaking to anyone from Yelp.  SAC ¶ 99.  More
19  fundamentally, these generic similarities do not overcome the stark inconsistencies and material
20  variations that pervade Plaintiffs' claims, including on matters that bear directly on liability and the
21  proposed class definition.  *See* MTD at 23-25.  For example, Sponsor Plaintiff Chan alleges she
22  purchased advertising because "she believed" Yelp would "tweek" her ratings based on specific
23  statements allegedly made in a conversation between Chan and a Yelp sales representative, while
24  Sponsor Plaintiff Paver Pro makes no allegation that it purchased advertising due to any "fear" of
25  manipulation at all.  SAC ¶¶ 81, 83, 99.  These and countless other material variations in the claims
26  asserted by the named Plaintiffs fundamentally preclude a finding of typicality.  *See* MTD at 24-25.

27  The cases cited by Plaintiffs further demonstrate the deficiency of their class allegations.  In
28  *Westways World Travel, Inc. v. AMR Corp.*, 2005 WL 6523266 (C.D. Cal. Feb. 24, 2005), the court

*decertified* a class asserting extortion-based claims, due to individual fact issues that pervade Plaintiffs' claims here. Affirming that class certification in an extortion case is "*only* viable if it is susceptible to class-wide proof," the court rejected the plaintiffs' proposed class wide extortion claims, finding that proof of "the subjective and objective fear" of individual class members could "vary significantly among the class" and would require a "fact-intensive inquiry" that would likely predominate over common issues. *Id*. at *8 (emphasis added). Precisely the same is true here.[11]

Likewise, Plaintiffs cite to inapt cases finding class certification appropriate where—unlike here—the claims hinged on uniform contracts or representations made to the proposed class. *See* Opp. at 24 (citing *Schlagal v. Learning Tree, Int'l*, No. 98-6384, 1999 WL 672306 (C.D. Cal. Feb. 23, 1999) (class members purchased stock in reliance on uniform set of written misrepresentations in financial statements); *Ewert v. eBay, Inc.*, Nos. C-07-02198 RMW C-07-04487 RMW, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) (claims based upon agreement by all class members to form contracts with eBay)). In stark contrast, the extortion allegations here hinge on specific conversations, review histories and mental states that are unique for each of hundreds of thousands of proposed class members—and that are non-overlapping in key respects even among the named Plaintiffs.

Because Plaintiffs have failed to demonstrate any credible basis for pursuing their fact-intensive extortion claims on behalf of a proposed class, their class allegations should be dismissed at the pleading stage. *See* MTD at 22-25 (citing cases).

### III. CONCLUSION

For each of these reasons, the Second Amended Complaint should be dismissed in its entirety with prejudice, and the class allegations should be dismissed and/or stricken.

DATED:  January 21, 2010            GIBSON, DUNN & CRUTCHER LLP

By: _____/s/ Ashlie Beringer_____
         Ashlie Beringer

---

[11] Nor do the claims asserted here approximate those of a proposed class of car dealers in *George Lussier Enters., Inc. v. Subaru of New England, Inc.*, 2001 WL 920060, at *17 (D.N.H. Aug. 3, 2001), which identified specific internal documents describing a common plan of extortion.