**United States District Court**
For the Northern District of California

1
2
3
4
5              UNITED STATES DISTRICT COURT
6              NORTHERN DISTRICT OF CALIFORNIA
7

8   BORIS Y. LEVITT, *et al.*,                    No. C-10-1321 EMC
9              Plaintiffs,                         **CONSOLIDATED WITH**
10      v.                                         No. C-10-2351 EMC
11  YELP! INC.,                                    **ORDER GRANTING DEFENDANT'S**
                                                   **MOTION TO DISMISS**
12             Defendant.
    _____/             **(Docket No. 77)**
13
14
15          Defendant's motion to dismiss Plaintiffs' Third Amended and Consolidated Class Action
16  Complaint ("TAC") for lack of standing and failure to state a claim came on for hearing before the
17  Court on October 14, 2011. Docket No. 77. Having considered the parties' submissions and oral
18  argument, the Court hereby enters the following order.
19          **I.      FACTUAL AND PROCEDURAL BACKGROUND**
20          Plaintiffs allege that Yelp unlawfully manipulated the content of their business review pages
21  in order to induce them to pay for advertising. *See* TAC, Docket No. 74, ¶ 118. They seek to
22  represent two subclasses of businesses, one which has declined to advertise with Yelp and one
23  which at some point in the relevant four-year time period advertised with Yelp. *Id.* ¶ 105. Plaintiffs
24  allege that Yelp's conduct constitutes violations of California Business and Professions Code §
25  17200 through its acts of extortion, civil extortion, and attempted civil extortion. *Id.* ¶ 118. In
26  addition, the TAC adds separate causes of action for civil extortion and attempted civil extortion.
27  *See Id.* ¶¶ 131-46.
28

This Court has provided a detailed summary of the facts and allegations in this case in its previous Order dismissing Plaintiffs' Second Amended Complaint ("SAC") with leave to amend. *See* Docket No. 70 at 2-7 ("Order Dismissing SAC"). Therefore, to the extent that those facts have not changed from the SAC to the TAC, the Court will not repeat its summary here.

The Court's previous order dismissed Plaintiffs' SAC for failure to state a claim upon which relief may be granted. While the Court concluded that Plaintiffs' had adequately pled facts to support both Article III and UCL standing to bring this action, *id.* at 9-13, Plaintiffs had nonetheless fallen short of stating a claim under the unlawful prong of § 17200 because (1) certain theories of extortion-those "premised on Yelp's failure to remove negative reviews"-were covered by Yelp's immunity under the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c), *see* Order Dismissing SAC at 14-15; (2) it was "entirely speculative that Yelp manufactures its own negative reviews or deliberately manipulates reviews to the detriment of businesses who refuse to purchase advertising," *id.*; and (3) the SAC lacked "factual allegations from which any distinct communication of a threat might be inferred," *id.* In short, the SAC had "fail[ed] to plausibly allege that any of Yelp's conduct amounted to an implied extortionate threat. *Id.* As for the unfair prong of § 17200, to the extent it was not based on the same defective theories of extortion already rejected, the Court found that Plaintiffs' claims failed because (1) they "point to no legislatively declared policy allegedly contravened by Yelp," *id.* at 19-20; (2) they fail to "allege beyond a speculative level that Yelp's actions threaten competition," *id.* at 20; and (3) "there are no allegations from which the court could reasonably infer that Yelp is materially tilting the economic playing field in favor of plaintiffs' competitors," *id.* The Court therefore dismissed the SAC with leave to amend and declined to reach Defendant's motion to strike class allegations. *Id.*

Plaintiffs filed their TAC on May 23, 2011. Docket No. 74. The TAC removes the allegations of former plaintiff Paver Pro and replaces them with new Plaintiff Wheel Techniques. *See* TAC ¶¶ 72-83. Plaintiffs allege that around late 2008 and early 2009, Wheel Techniques noticed negative reviews on its Yelp page which did not correspond with its records of actual customers. TAC ¶¶ 74-75. At "[a]round the same time," Wheel Techniques received sales calls from Yelp requesting that the business advertise. *Id.* ¶ 76. Plaintiffs allege that the "false" reviews

United States District Court

For the Northern District of California

1    were created and posted by Yelp "as a threat to induce Wheel Techniques to advertise." *Id.* ¶ 77.

2    Also in 2009, Plaintiffs alleged that when Wheel Techniques contacted Yelp to ask why a

3    competitor had a high rating on Yelp, the Yelp representative told him the competitor advertised and

4    "we work with your reviews if you advertise with us." *Id.* ¶ 78.  On March 8, 2010, Wheel

5    Techniques was again contacted to purchase advertising.  Upon declining, Plaintiffs allege that a

6    1-star review was moved to the top of the business page "within minutes" as a threat to induce

7    Wheel Techniques to advertise.  *Id.* ¶¶ 79-81.  Plaintiffs allege that Wheel Techniques owner John

8    Mercurio was told[1]  several Yelp employees had been fired and computers had been frozen "as a

9    result of scamming related to advertising." *Id.* ¶ 82.

10            Apart from the Wheel Techniques allegations, Plaintiffs also add allegations that

11   "approximately 200 Yelp employees or individuals acting on behalf of Yelp have written reviews of

12   businesses on Yelp." *Id.* ¶ 37.  Plaintiffs allege that Yelp's CEO has admitted to a New York Times

13   blog that "Yelp has paid users to write reviews." *Id.* ¶ 38.

14            Plaintiffs' TAC adds no other new factual allegations.

15            Defendant filed a new motion to dismiss the TAC and to strike Plaintiffs' class allegations on

16   July 22, 2011.  Docket No. 77.  This motion is now pending before the Court.

17                              **II.   DISCUSSION**

18   A.       Standing

19            Defendant's motion to dismiss renews its prior argument that Plaintiffs lack Article III

20   standing.  Mot. at 19.  At a constitutional minimum, standing requires the party invoking federal

21   jurisdiction to show that it has "suffered some actual or threatened injury as a result of the putatively

22   illegal conduct of the defendant, and that the injury can be traced to the challenged action and is

23   likely to be redressed by a favorable decision." *Valley Forge Christian Coll. v. Ams. United for*

24   *Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (citations and internal quotation marks

25   omitted).  Unlike its prior motion, which presented only a facial challenge to standing based on the

26   pleadings, Defendant now brings a Rule 12(b)(1) factual challenge, pursuant to which the Court "is

27   _____

28         [1]  The TAC does not indicate the source of this information.

3

**United States District Court**
For the Northern District of California

1    permitted to look beyond the complaint to extrinsic evidence."[2]  *In re Facebook Privacy Litig.*, No.

2    C 10-2389 JW, 2011 WL 2039995, at *2 (N.D. Cal. May 12, 2011) (citing *Wolfe v. Strankman*, 392

3    F.3d 358, 362 (9th Cir. 2004)).  When a defendant "present[s] affidavits or other evidence properly

4    brought before the court, the party opposing the motion must furnish affidavits or other evidence

5    necessary to satisfy its burden of establishing subject-matter jurisdiction." *Safe Air For Everyone v.*

6    *Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004).  Plaintiffs' allegations are not entitled to a presumption

7    of truthfulness under a factual attack. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000); *Augustine v.*

8    *United States*, 704 F.2d 1074, 1077 (9th Cir.1983).  "However, in the absence of a full-fledged

9    evidentiary hearing, disputes in the facts pertinent to subject-matter are viewed in the light most

10   favorable to the opposing party." *In re Facebook*, 2011 WL 2039995 at *2 (citing *Dreier v. United*

11   *States*, 106 F.3d 844, 847 (9th Cir. 1996)). "The disputed facts related to subject-matter jurisdiction

12   should be treated in the same way as one would adjudicate a motion for summary judgment."  *Id.*

13            In this case, the Court finds that the standing issue is too intertwined with the merits of

14   Plaintiffs' claims to be determined at this stage on the basis of a factual challenge.  As the Ninth

15   Circuit held in *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987), "The relatively

16   expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction in a case

17   like this, where issues of jurisdiction and substance are intertwined."  Whether Yelp in fact created

18   or orchestrated the creation of negative content on Plaintiffs' business pages, and/or whether it

19   removed certain content in bad faith, goes directly to the merits of Plaintiffs' claims and whether

20   Yelp's conduct falls inside or outside the shelter of the CDA.  *See* Order Dismissing SAC at 17-18

21   (examining whether Plaintiffs had sufficiently alleged that Yelp's conduct was in bad faith and that

22   it was directly involved in the creation or manipulation of content).  "Where jurisdiction is

23   intertwined with the merits, [the Court] must 'assume [ ] the truth of the allegations in a complaint . .

24   . unless controverted by undisputed facts in the record.'" *Warren v. Fox Family Worldwide, Inc.*,

25   328 F.3d 1136, 1139 (9th Cir. 2003) (quoting Roberts, 812 F.2d at 1177).

26   ─────────────────

27        [2]  Plaintiffs' evidentiary objections, Docket No. 85-2, are overruled.  *See Hughes v. United*
     *States*, 953 F.2d 531, 543 (9th Cir. 1992) ("While the facts underlying the affidavit must be of a type
28   that would be admissible as evidence . . . the affidavit itself does not have to be in a form that would
     be admissible at trial.").

In the instant case, while Defendant's evidence casts doubt on Plaintiffs' allegations that Yelp created some of the content at issue on Plaintiffs' review pages, Plaintiffs point out that there are other potential routes for employees to contribute content without being detected through Mr. MacBean's investigation methods. *See* Gralnik Decl., Docket No. 85-1, ¶¶ 9-14. Similarly, regarding Yelp employees' ability to re-arrange the order of reviews, MacBean's declaration indicates that its employees do not have the technical ability to do so. MacBean Decl. 7. However, such an assertion is contrary to Plaintiffs' allegations in their complaint as to what they were told by some of Yelp's own employees. *See* TAC ¶¶ 36, 63-64, 78, 87-88, 91, 99. The Court also notes that Plaintiffs have not been afforded an opportunity to conduct discovery. Thus, permitting a Rule 12(b)(1) challenge based on facts asserted by Yelp would be inappropriate. *Cf.* Fed. R. Civ. P. 56(d).

Accordingly, at this juncture, the Court reaffirms Judge Patel's prior conclusion that "based on the allegations in the [TAC], [the Court] may exercise its limited jurisdiction in this case." Order Dismissing SAC at 9; *see Augustine v. United States*, 704 F.2d 1074, 1079 (9th Cir. 1983) ("[I]t was improper for the district court to grant the government's [factual] motion [challenging jurisdiction] unless the relevant facts were not in dispute and the government was entitled to prevail as a matter of law.") (citing *Thornhill Publishing Co. v. General Telephone Corp.*, 594 F.2d 730, 733-34 (9th Cir.1979)); *Roberts*, 812 F.2d at 1178 ("If a district court cannot determine jurisdiction on the basis of a threshold inquiry analogous to a 12(b)(6) motion, the court may assume jurisdiction and go on to determine the relevant jurisdictional facts "on either a motion going to the merits or at trial.") (citations omitted). Defendant's motion to dismiss for lack of standing is therefore DENIED and Plaintiffs' request for jurisdictional discovery, Opp. at 11, is DENIED as moot.

B.    Failure to State a Claim

Defendant next argues that Plaintiffs' TAC fails to improve upon their SAC and that it still fails to state a claim under either the unlawful or the unfair prong of § 17200. *See* Mot. at 10-11. Furthermore, Defendant argues that the TAC similarly fails to state a claim of civil extortion or attempted civil extortion. *Id.* at 15-16. The Court agrees.

United States District Court

For the Northern District of California

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). A motion to dismiss should be granted if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556).

Allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.1996). The Court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements" of a cause of action. *Iqbal*, 129 S.Ct. at 1950; *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

As a preliminary matter, the parties dispute whether Judge Patel's previous Order constitutes the law of the case. *Compare* Mot. at 11-12, *with* Opp. 12-13; *see Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 469 (9th Cir. 2000) ("Under [law of the case] doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court or a higher court in the same case."). To the extent Plaintiffs add new allegations to the TAC that effect all claims, the law of the case doctrine would not apply. *See, e.g.*, *Moreno v. The GEO Group, Inc.*, No. 1:07-CV-01630-CKJ, 2009 WL 841139, at *2 (E.D. Cal. March 26, 2009) (declining to apply law of the case where "Defendants' current Partial Motion to Dismiss presents additional bases to determine that Watts was not a government actor and cites to additional authority in support of their assertion that a Bivens claim cannot proceed against Watts"). In addition, Plaintiffs urge the Court

United States District Court

For the Northern District of California

1  to examine the full TAC, including those sections that merely repeat the same allegations as the

2  SAC.  *See* Opp. at 13 (arguing that the law of the case doctrine does not apply even as to issues

3  covered in both complaints because the TAC supersedes the SAC).  Because the law of the case

4  doctrine "directs a court's discretion, [but] does not limit the tribunal's power," the Court will

5  consider the TAC as a whole, rather than simply its new allegations.  *Mendenhall*, 213 F.3d at 469

6  (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

7        Nonetheless, while the Court's reasoning differs from Judge Patel's with respect to certain

8  aspects of this case, the Court agrees with her ultimate conclusion and finds that the TAC is as

9  deficient as the SAC.

10       1.    Yelp's Creation of Negative Reviews

11       First, the TAC, like the SAC, fails to allege facts sufficient to support a conclusion that Yelp

12 created any content.  Plaintiffs have added an allegation that "approximately 200 Yelp employees or

13 individuals acting on behalf of Yelp have written reviews of businesses on Yelp," TAC ¶ 37, and that

14 "Yelp has paid users to write reviews," *id.* ¶ 38.  Despite these allegations, however, it remains

15 "entirely speculative that Yelp manufactures its own negative reviews or deliberately manipulates

16 reviews to the detriment of businesses who refuse to purchase advertising," and "[t]he [TAC]

17 provides no basis from which to infer that Yelp authored or manipulated the content of the negative

18 reviews complained of by plaintiffs," Order Dismissing SAC at 17.  That Yelp employees have

19 written reviews, even for pay, does not raise more than a mere possibility that Yelp has authored or

20 manipulated content related to Plaintiffs in furtherance of an attempt to "extort" advertising

21 revenues.  *See Iqbal*, 129 S. Ct. at 1950 ("[W]here the well-pleaded facts do not permit the court to

22 infer more than the mere possibility of misconduct, the complaint has alleged-but it has not

23 'show[n]'-'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)).  Similarly, that

24 Wheel Techniques noticed negative reviews of its business that did not match its customer records

25 does not support the logical leap that Yelp created those reviews.  *See* TAC ¶¶ 74-75.  Nor does an

26 allegation that Mr. Mercurio (Wheel Techniques' owner) "was told" by an unnamed source "that a

27 former Yelp employee stated that Yelp, upon information and belief, terminated a group of sales

28 employees . . . as a result of scamming related to advertising" and that "the computers of sales

1   employees were, at one point, frozen to prohibit employees from being able to change reviews" raise

2   more than a speculative possibility that Yelp employees created or substantively manipulated the

3   content of Plaintiffs' reviews in this case.  *See* TAC ¶ 82.  "Scamming related to advertising" could

4   have referred to a host of practices not involving manufacturing of false reviews.

5             2.      <u>Yelp's Manipulation of Third Party Reviews</u>

6           Second, with respect to Plaintiffs' allegations based on Yelp's purported manipulation of

7   user-generated content, the Court concludes that Plaintiffs' claims based on this conduct are barred

8   by the CDA.  Section 230(c) of the CDA provides, in relevant part,

9                (1) Treatment of publisher or speaker

10               No provider or user of an interactive computer service shall be treated

11               as the publisher or speaker of any information provided by another
             information content provider.

12               (2) Civil liability

13               No provider or user of an interactive computer service shall be held
             liable on account of –

14

15               (A)     any action voluntarily taken in good faith to restrict access to
                   or availability of material that the provider or user considers to

16                      be obscene, lewd, lascivious, filthy, excessively violent,
                    harassing, or otherwise objectionable, whether or not such
                    material is constitutionally protected.

17

18  47 U.S.C. § 230(c).  An "interactive computer service" is defined as "any information service,

19  system, or access software provider that provides or enables computer access by multiple users to a

20  computer server, including specifically a service or system that provides access to the Internet and

21  such systems operated or services offered by libraries or educational institutions."  *Id*. § 230(f)(2).

22  An "information content provider" is defined as "any person or entity that is responsible, in whole or

23  in part, for the creation or development of information provided through the Internet or any other

24  interactive computer service."  *Id*. § 230(f)(3).  Thus, the CDA immunizes providers of an

25  "interactive computer service" – such as Yelp – "where liability hinges on content independently

26  created or developed by third-party users," unless the service provider (such as Yelp) created or

27  developed part of that content.  Order Dismissing SAC at 15.  Accordingly, "any activity that can be

28  boiled down to deciding whether to exclude material that third parties seek to post online is perforce

United States District Court

For the Northern District of California

1   immune under [47 U.S.C.] section 230." *Fair Housing Council of San Fernando Valley v.*

2   *Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (en banc).

3           Plaintiffs' allegations of extortion based on Yelp's alleged manipulation of their review

4   pages – by removing certain reviews and publishing others or changing their order of appearance –

5   falls within the conduct immunized by § 230(c)(1).  *See Carafano v. Metrosplash.com. Inc.*, 339

6   F.3d 1119, 1123 (9th Cir. 2003) ("[Section] 230(c) provides broad immunity for publishing content

7   provided primarily by third parties."); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)

8   ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional

9   editorial functions – such as deciding whether to publish, withdraw, postpone or alter content – are

10  barred."), *cited with approval by Roommates.com*, 521 F.3d at 1179-80; *Mazur v. eBay Inc.*, No. C

11  07-03967, 2008 WL 618988, at *9 (N.D. Cal. Mar. 4, 2008) (Patel, J.) ("Screening a potential

12  auction house . . . is akin to deciding whether to publish and therefore eBay is immune under section

13  230 for its screening decisions.").

14          Plaintiffs contend that Yelp "creates" its aggregate business rating (the star rating at the top

15  of each business's review page).  They argue this constitutes editorial content created by Yelp, and

16  thus § 230(c)(1) does not apply.  Defendant counters that this aggregate rating is based solely on an

17  aggregation of user-generated data, and thus is still covered by the CDA.  Yelp relies on *Gentry v.*

18  *eBay, Inc.*, 99 Cal. App. 4th 816, 834 (2002), which found eBay's star ratings based on

19  user-generated data did not render eBay a content provider because such a construction "would treat

20  eBay as the publisher or speaker of the individual defendants' materials, and thereby conflict with

21  section 230."  *Gentry* was cited with approval by *Carafano*, 339 F.3d at 1124.

22          Since the aggregate rating in this case is likewise based on user-generated data, the Court

23  finds that aspect of *Gentry* persuasive.  To be sure, there is a potential distinction between the instant

24  case and *Gentry* inasmuch as Plaintiffs contend the inclusion and exclusion of reviews upon which

25  the aggregate rating is based was manipulated for wrongful reasons by Yelp.  In contrast, any bad

26  faith manipulation in *Gentry* was at the hand of third-party content providers, not eBay.  99 Cal.

27  App. 4th at 834.  But Plaintiffs do not contend that Yelp's aggregative star rating based on well-

28  intentioned vetting of the database (*e.g.*, to filter out false reviews or those which did not meet

United States District Court

For the Northern District of California

1  Yelp's neutral terms and conditions) would fall outside of § 230(c)(1).  Rather, Plaintiffs' argument

2  is based on Yelp's *motive* in vetting the reviews.

3        This places a premium on the more fundamental question whether the decision to include,

4  exclude, or rank comments for purportedly wrongful purposes falls outside the "traditional editorial

5  function" of a publisher as Judge Patel suggested in her order dismissing the SAC.  Docket No. 70,

6  at 16 (*quoting Mazur v. eBay, Inc.*, 2008 WL 618988 at *10 (N.D. Cal. March 4, 2008).  In so

7  arguing, Plaintiffs in effect seek to import an intent-based exception into Section 230, whereby the

8  same conduct that would otherwise be immune under the statute (editorial decisions such as whether

9  to publish or de-publish a particular review) would no longer be immune when motivated by an

10  improper reason, such as to pressure businesses to advertise.

11        The Court is sympathetic to the ethical underpinning of Plaintiffs' argument and is mindful

12  of Judge Patel's reasoning that such a wrongful motive could strip the Defendant of the editorial

13  immunity.[3]  However, § 230(c)(1) contains no explicit exception for impermissible editorial motive,

14  whereas § 230(c)(2) does contain a "good faith" requirement for the immunity provided therein.[4]

15  That § 230(c)(2) expressly provides for a good faith element omitted from § 230(c)(1) indicates that

16  Congress intended not to import a subjective intent/good faith limitation into § 230(c)(1).  "[W]here

17  Congress includes particular language in one section of a statute but omits it in another . . . , it is

18  generally presumed that Congress acts intentionally and purposely in the disparate inclusion or

19  exclusion."  *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993).  Accordingly, the text of the

20  two subsections of § 230(c) indicates that (c)(1)'s immunity applies regardless of whether the

21  publisher acts in good faith.

22

23  _____

24        [3] Indeed, Judge Patel noted that such conduct "seems quite distinct from the traditional
editorial functions of a publisher" that courts have interpreted section 230 to protect.  Order

25  Dismissing SAC at 16.

26        [4] These the two immunity provisions are distinct.  *See Barnes v. Yahoo!, Inc.*, 570 F.3d
1096, 1105 (9th Cir. 2009) ("Subsection (c)(1), by itself, shields from liability all publication

27  decisions, whether to edit, to remove, or to post, with respect to content generated entirely by third
parties. Subsection (c)(2), for its part, provides an additional shield from liability . . . not merely

28  [for] those whom subsection (c)(1) already protects, but [for] any provider of an interactive
computer service.").

**United States District Court**

For the Northern District of California

1    Nor have cases interpreting 230(c)(1) established or suggested an intent-based exception to

2  its immunity.  Indeed, courts have found the immunity applies to conduct that arguably constitute

3  bad faith.  For example, courts have found providers to be immunized from intentional torts like

4  defamation, even when the provider has arguably exercised its publishing functions in bad faith.

5  *See, e.g.*, *Zeran*, 129 F.3d at 331-33 (finding interactive service providers to be immune from

6  defamation liability even when they have actual knowledge of the statements' falsity); *Asia*

7  *Economic Institute v. Xcentric Ventures LLC*, No. CV 10-01360 SVW (PJWx), 2011 WL 2469822,

8  at *6 (C.D. Cal. May 4, 2011) (holding that defendant's deliberate manipulation of HTML code for

9  paying customers to make certain reviews more visible in online search results was immune under

10  section 230 and that "[a]bsent a changing of the disputed reports' substantive content that is visible

11  to consumers, liability cannot be found.").

12    The only authority that could be read to support Plaintiffs' interpretation of § 230(c)(1) is the

13  observation in *Mazur* and other cases that § 230(a)(1) immunity protects service providers from

14  lawsuits for their "exercise of a publisher's traditional editorial functions."  2008 WL 618988 at *9;

15  *see Gentry*, 99 Cal. App. 4th at 829; *Zeran*, 129 F.3d at 330.  Wrongfully manipulating a business's

16  review page for the purpose of soliciting advertising revenues, as Judge Patel noted, would seem

17  "quite distinct from the traditional editorial functions of a publisher."  Order Dismissing SAC at 16.

18  However, these cases which refer to traditional editorial functions do not describe or imply a range

19  of permissible *purposes* behind exercise of that function.  They merely describe the *exercise* of that

20  function (*i.e.*, the decision whether to publish content) without regard to the reasons a given

21  publisher might make for such a decision.  For example, *Gentry* defines the editorial function as

22  "whether to publish, withdraw, postpone or alter content."  99 Cal. App. 4th at 829 (quoting *Zeran*,

23  129 F.3d at 330).  There is no indication that "whether to publish" means "whether to publish for

24  good faith reasons."  Thus, while courts have described the functions of an editor (and the

25  application of § 230(c)(1) thereto), they have not scrutinized the purposes behind an editor's

26  exercise of those functions under § 230(c)(1).

27    Furthermore, it should be noted that traditional editorial functions often include subjective

28  judgments informed by political and financial considerations.  *See, e.g.*, *Blumenthal v. Drudge*, 992

United States District Court

For the Northern District of California

1    F. Supp. 44, 49-52 (D.D.C. 1998).  Determining what motives are permissible and what are not

2    could prove problematic.  Indeed, from a policy perspective, permitting litigation and scrutiny

3    motive could result in the "death by ten thousand duck-bites" against which the Ninth Circuit

4    cautioned in interpreting § 230(c)(1).  *Roommates.Com*, 521 F.3d at 1174.  One of Congress's

5    purposes in enacting § 230(c) was to avoid the chilling effect of imposing liability on providers by

6    both safeguarding the "diversity of political discourse . . . and myriad avenues for intellectual

7    activity" on the one hand, and "remov[ing] disincentives for the development and utilization of

8    blocking and filtering technologies" on the other hand. §§ 230(a), (b); *see also* S. Rep. No. 104-230,

9    at 86 (1996) (Conf. Rep.), *available at* 1996 WL 54191, at *172 (describing purpose of section 230

10   to protect providers from liability "for actions to restrict or to enable restrict of access to

11   objectionable online material").  For that reason, "[C]lose cases . . . must be resolved in favor of

12   immunity, lest we cut the heart out of section 230 . . . ."  *Roommates.Com*, 521 F.3d at 1174.

13           As illustrated by the case at bar, finding a bad faith exception to immunity under § 230(c)(1)

14   could force Yelp to defend its editorial decisions in the future on a case by case basis and reveal how

15   it decides what to publish and what not to publish.  Such exposure could lead Yelp to resist filtering

16   out false/unreliable reviews (as someone could claim an improper motive for its decision), or to

17   immediately remove all negative reviews about which businesses complained (as failure to do so

18   could expose Yelp to a business's claim that Yelp was strong-arming the business for advertising

19   money).  The Ninth Circuit has made it clear that the need to defend against a proliferation of

20   lawsuits, regardless of whether the provider ultimately prevails, undermines the purpose of section

21   230.  *See Roommates.Com*, 521 F.3d at 1174 (cautioning that section 230 should be "interpreted to

22   protect websites not merely from ultimate liability, but from having to fight costly and protracted

23   legal battles"); *Carafano*, 339 F.3d at 1124 ("Faced with potential liability for each message

24   republished by their services, interactive computer service providers might choose to severely

25   restrict the number and type of messages posted. Congress considered the weight of the speech

26   interests implicated and chose to immunize service providers to avoid any such restrictive effect.")

27   (quotations omitted); *see also Zeran*, 129 F.3d at 331-33 (explaining that even a notice-based

28

United States District Court

For the Northern District of California

1   standard for defamation liability – as opposed to a strict liability standard – would create a chilling

2   effect on providers).

3          Thus, even assuming Plaintiffs have adequately pled allegations stating a claim of an

4   extortionate threat with respect to Yelp's alleged manipulation of user reviews, Defendant is

5   immune from suit under § 230(c)(1).  Although the Court is sympathetic to Plaintiffs' complaint, the

6   sweep of § 230(c)(1) as a matter of text and legislative purpose is broad.

7          3.     Failure to State Claims Based on Yelp's Creation or Manipulation of Content

8          Accordingly, Plaintiffs have failed to allege a violation of § 17200 as well as Plaintiffs'

9   separate civil extortion and attempted civil extortion claims.[5]  These claims are based on the

10  assertion that Yelp:  (1) created negative reviews – a claim not supported by the allegations of the

11  TAC, and (2) manipulated the third party reviews to pressure businesses to advertise – a claim

12  barred by § 230(c)(1).

13         The same is true as to the unfair prong of § 17200.  That claim is likewise based on the same

14  allegations that Yelp created negative reviews or manipulated those of third parties.[6]

15         The Court notes that Plaintiffs do not allege in the TAC that Yelp violated § 17200 by falsely

16  stating its posting of reviews is based on bona fide neutral criteria.  Indeed, it could be argued that

17  the harm to the public (and potentially to businesses), which relies on the purported neutrality of

18  Yelp's service, stems from an alleged misrepresentation about Yelp's posting criteria and failure to

19  disclose its alleged practice of manipulating ratings in favor of those who advertise.  Claims of

20  misrepresentation, false advertising, or other causes of action based not on Yelp's publishing

21  conduct but on its representations regarding such conduct, would not be immunized under §

22
          [5]  The parties dispute whether Plaintiffs may separately allege a cause of action for civil
23  extortion.  *Compare Hisamatsu*, 2009 WL 4456392 at *5 ("California has long recognized a claim
    of 'civil extortion.'"), *with Arista Records v. Sanchez*, No. CV 05-07046 FMC (PJWx), 2006 WL
24  5908359, at *2 (C.D. Cal. March 1, 2006) ("[T]here is no private right of action for "extortion.").
    However, to the extent courts have recognized such a claim, it is based on the same elements as
25  criminal extortion and therefore rises and falls along with Plaintiffs' 17200 claim.

26         [6]  While Plaintiffs point out that the determination of whether a business practice is unfair
    "often cannot be made solely on the pleadings," *Ferrington v. McAfee, Inc.*, No.
27  10-CV-01455-LHK, 2010 WL 3910169 at * 13 (N.D. Cal. Oct. 5, 2010), courts may still dismiss
    such claims where they fail to allege facts sufficient to support such a cause of action, *see*
28  *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 709-10 (N.D. Cal. 2009).

United States District Court
For the Northern District of California

1  230(a)(1).  *See, e.g.*, *Anthony v. Yahoo Inc.*, 421 F. Supp. 2d 1257, 1263 (N.D. Cal. 2006) (holding

2  that the CDA did not immunize defendant for misrepresentations relating to third-party generated

3  content); *Barnes*, 570 F.3d at 1108-09 (holding that a breach of contract claim based on promissory

4  estoppel for failing to remove content a website promised to remove was not barred by the CDA).

5  However, while Plaintiffs refer vaguely to Yelp's misrepresentations, *see* TAC ¶ 4 ("Contrary to the

6  representations Defendant makes to the general public, a business's reviews are often connected to

7  whether a business advertises with Defendant."), they do not allege any cause of action based on that

8  particular harm.  Indeed, Plaintiffs voluntarily withdrew their false advertising allegations from their

9  First Amended Complaint, and so it is not at issue herein.  *Compare* First Amended Complaint,

10  Docket No. 48 (including allegations of false advertising), *with* Second Amended Complaint,

11  Docket No. 58 (deleting all references to false advertising).

12  　　　Thus, the Court finds that leave to amend the TAC would be futile in this case.  *Eminence*

13  *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  Plaintiffs have already been

14  granted leave to amend to cure the same deficiencies described herein and have failed to do so.

15  Indeed, Plaintiffs added only minimal allegations in the TAC that failed to correct the deficiencies

16  identified by Judge Patel.  *See* Order Dismissing SAC at 20 ("[P]laintiffs' counsel represented at the

17  motion hearing that continued investigation has produced additional facts that would bolster

18  plaintiffs' allegations.").  Defendant's motion to dismiss for failure to state a claim is granted.  The

19  TAC is dismissed with prejudice.

20  C.　　Motion to Strike

21  　　　Because the Court determines that the TAC fails to state a plausible claim for relief, it need

22  not address Defendant's motion to strike Plaintiffs' class allegations.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**III.    <u>CONCLUSION</u>**

For the foregoing reasons, the Court hereby **GRANTS** Defendant's motion to dismiss with prejudice.  The Clerk shall issue judgment and close the file.

This order disposes of Docket No. 77.


IT IS SO ORDERED.


Dated:  October 26, 2011

_____
EDWARD M. CHEN
United States District Judge